THE EXECUTOR OF GEORGE D. C. MOORE, deceased,

*v.*

HARRIET E. MOORE et al.

1. The rule against perpetuities, so far as it affects gifts made to cemetery corporations, for certain designated purposes, has been abolished in this state.

2. Any words which clearly manifest an intention on the part of the testator to give a particular thing constituting part of his property, as distinguished from all other things of the same kind, and which it appears he did not use to designate quantity, will make the gift specific.

3. The rule respecting specific legacies is not a technical arbitrary rule, to be answered only by the use of particular words and expressions, but is an embodiment of the general principles by which the character of legacies, whether they are general or specific, must be tested and determined.

4. A direction to invest a certain sum of money in the purchase of a particular mortgage is not a specific but a general legacy.

5. Where there is a deficiency of assets to answer the legacies, the question whether the specific shall abate with the general legacies must be decided according to the intention of the testator.

6. All legatees, both general and specific, derive their rights from the will of their testator, and if he has declared his intention as to their respective rights, in case of deficiency of assets, such declaration constitutes the standard by which their rights must be measured.

7. A testamentary direction which contravenes the law, or which, if executed, will deprive creditors of any of their remedies, is without legal force.

8. Where a gift is made to a corporation by an erroneous name, but the description of the legatee given by such name or otherwise is sufficient to enable the court, with the aid of extrinsic evidence, to identify the legatee with certainty, the misnomer will not defeat the gift.

On final hearing on bill, answers and proofs.

*Mr. Theodore Runyon,* for the complainant.

*Mr. John R. Hardin,* for Frances D. Stanwood.

*Mr. Frederick G. Burnham,* for the Board of Home Missions and the Board of Foreign Missions of the Presbyterian Church, and the Board of the Church Erection Fund of the Presbyterian Church.

*Mr. John W. Taylor,* for the Presbyterian Board of Relief for Disabled Ministers.

*Mr. Sherrerd Depue,* for the Protestant Foster Home of Newark.

VAN FLEET, V. C.

This suit was brought to procure a construction of the will of George D. G. Moore, deceased. His executor is the complainant. He says that in attempting to execute his testator's will he finds himself confronted by several questions, so difficult to solve, that he ought not to be required to act in respect to them until his duty has been judicially defined. An executor, or any other person charged with fiduciary duties, has an undoubted right in cases where his duties or his rights are involved in doubt, so that he cannot act without risk of doing wrong either to himself or others, to ask judicial direction.

The testator died on the 13th day of October, 1891, leaving a will consisting of three distinct papers—*first,* a will proper, bearing date June 17th, 1889; *second,* a codicil, bearing date January 24th, 1891; and, *third,* a second codicil, bearing date October 5th, 1891. He died, it will be noticed, eight days after the last codicil was executed. He left a widow, but no issue. In the interim between the date of the last codicil and the day of his death he married his second wife. He owned at the time of his death real and personal estate in this state, and some real estate elsewhere, from which, the complainant believes, not much over $60,000 can be realized. His pecuniary legacies amount to

$51,500. He also bequeathed two mortgages upon which there is due, for principal, $3,450, and thirty shares of bank stock, worth, on the market, about $3,300. In addition to these gifts and several bequests of specific chattels, consisting of furniture, books and articles for personal use and adornment, he gives $50,000 in trust to his executor, with direction to pay the interest thereof, semi-annually, to his widow during her life, and on her death to apply and pay the principal " to and for the purpose of a home for respectable aged people of both sexes, where husband and wife can be taken care of together, and not separated in their old age." It thus appears that the total amount disposed of by the testator, including the mortgages and bank stock but excluding the value of the chattels, is $108,300. That sum exceeds the estimated value of his estate by $48,300.

The first point on which the complainant asks for instruction is, whether or not it is his duty to pay a legacy given to the proprietors of the Rosedale cemetery. The legatee is a corporation formed for the purpose of acquiring land to be held and used exclusively for the burial of the dead. The sum originally given was $400, but the first codicil increased it $100, making the total gift $500. The words of the original gift are:

" I order and direct that there shall be paid immediately after my death to The Proprietors of the Rosedale Cemetery the sum of $400 for the perpetual care of my burial lot in said Cemetery, the interest to be used and applied to caring for and ornamenting said lot by keeping flowers planted and growing thereon as I have done as nearly as the said interest will allow."

The validity of this gift is doubted. The ground of doubt is whether, inasmuch as the gift creates a perpetual trust for a purely private purpose, and is not, therefore, a gift for a charitable use, it is not void on the ground that it violates the rule against perpetuities. Professor Gray defines this rule as follows: " No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." *Gray Perp.* § *201.* The rule applies to the creation of both legal and equitable interests, and interests in both real and per-

sonal estate.   Under the rule established by the decision of this
court, in *Detwiller* v. *Hartman, 10 Stew. Eq. 341*, there can be
no doubt that if the gift in this case had been made to the com-
plainant, or to any other natural person, in its present form, that
it would have been invalid.   The testator, in the case just cited,
ordered his executor to invest $5,000 in bonds of the United
States and expend the income arising therefrom in keeping his
family monument and burial plot and the enclosure thereof in
good repair.   Chancellor Runyon held that while perpetual trusts
might lawfully be created for the promotion of charities, still,
as the trust under review was not of that character, but was
created to promote a purely private purpose, it must be declared
void.   In describing the legal character of the gift, the Chancel-
lor used this language: "The direction in this case does not
limit the continuance of the fund for repairs, and the testator
makes no disposition whatever of the principal.   The provision,
therefore, is to be regarded as creating a perpetuity—as locking
up $5,000 forever for the purpose of keeping the testator's
burial place and monument in good repair.   That object is not
a charity, and therefore the bequest, because it is a perpetuity,
cannot be sustained."   This exposition of the law touches the
gift now under consideration at every essential point except one,
and that is, the gift here is not made to a natural person, but to
a corporation created for the purpose of providing a place of
burial for the dead.

This difference in the form of the two legacies raises this
question : Are corporations, created for the purpose for which the
legatee in this case was created, authorized by law to take prop-
erty, by gift, subject to a perpetual trust for the purpose of
keeping the burial lot of the donor in the cemetery of the legatee
perpetually adorned with flowers?   No doubt can be entertained
that the rule against perpetuities may be altered or abolished by
the legislature.   By an act passed in 1878 it was enacted that
any cemetery association within this state, existing under special
charter or by general law, may take and hold any property be-
queathed or given upon trust to apply its income to the planting
and cultivation of trees, shrubs, flowers and plants in and around

any lot or plot in such cemetery, or to the improvement or embellishment of any lot or plot therein, according to the terms of such grant, devise or bequest. *Rev. Sup. pp. 76, 77, §§ 12, 13.* Only so much of this statute has been given as bears upon the question under consideration and not its full text. The design of this statute, as I interpret it, was to abrogate the rule against perpetuities, so far as that rule applied to gifts made to cemetery corporations, and to make it lawful for such corporations to hold property, acquired by gift, subject to a perpetual trust for certain designated purposes. It plainly declares that it shall be lawful for such corporations to take and hold property, upon trust, according to the terms of the grant, devise or bequest by which the trust is created. This language, understood in its ordinary sense, is broad enough to comprehend a perpetual trust. Moreover, in construing this statute, it is important to remember that the corporations, whose capacity the legislature were defining, are endowed with immortality for the purpose of providing places of burial for the dead, where their dust may rest undisturbed and inviolate forever, and that the use of any part of their lands, by the owner of a lot or plot, for the burial of the dead, withdraws such lot or plot from all the ordinary uses to which land may be put, and renders it inalienable forever thereafter except as a place of sepulture. *Rev. p. 102 § 11.* This legislative declaration gives expression to a sentiment common to mankind. The place where the dead are buried is regarded generally, if not universally, as hallowed ground. We express our love for our dead by placing their bodies in the earth tenderly and sorrowfully ; we try to perpetuate their memories by the erection of monuments, and we give expression to our veneration for their dust by adorning and beautifying the spot where it reposes. Their dust is sacred to us. Our reverence for it creates a strong natural desire that it shall never be disturbed or desecrated, and that the place where it rests shall be regarded as consecrated ground and its beauty preserved until the end of time. The statutory provision under consideration had its origin, as I believe, in this sentiment. As I read the statute, the legislature intended, by its enactment, to enable any person, who wished to

do so, to make provision by gift to a cemetery corporation, upon trust, for the perpetual care, preservation and adornment of his own tomb or that of any other person.   Under this view it follows that the gift in question is valid, and also that it is the duty of the complainant to pay the legacy.

The next question involved in doubt is, Whether the specific legacies must, in obedience to the intention of the testator, abate with the general pecuniary legacies?   There will be, as already shown, a very large deficiency of assets.   To show how the question just stated arises, it is necessary to make a preliminary statement.   The testator, by his will proper or first testamentary paper, after giving the legacy to the Rosedale cemetery, which has just been considered, gave his executor $10,000 in trust, with direction to invest it and pay its net annual income to his sister Harriet during her life, and he also authorized his executor, in case the income should not be sufficient to furnish his sister a comfortable support, to apply so much of the principal as should, in his judgment, be needful for that purpose.   Then, after giving several other legacies, both specific and general, he gave all the rest and residue of his estate to his executor, in trust, " to apply and pay the same to and for the purpose of a home for respectable aged people of both sexes," provided such a home should be established within five years from the time of his death.   And he further directed, in case no such home should be established within the time limited, that then his residuary estate should be divided and distributed *pro rata* among the legatees before named in his will, in proportion to their respective moneyed legacies, and that for the purpose of such division and distribution the legacies of bank stock should be reckoned at the market value of the stock, and the mortgages given by the fifth clause of his will should be considered as a legacy.   The testator does not say, it will be observed, that the mortgages shall be considered and treated as a money legacy, but, on looking at the whole will, and thus discerning his general testamentary scheme, it is made quite clear, I think, that that is what he meant.   The gift of the mortgages, made by the fifth clause of the will, is in these words:

" Whereas I hold a mortgage executed to me by my niece Sarah M. Walsh, and her husband, Zachariah Walsh, for $1200; and whereas the Howard Savings Institution, of Newark, also hold a mortgage, given by the same parties, for $2250, both being on the same property, to wit, her house in Sixth street in Newark, I direct my executor to pay off said mortgage to the Howard Savings Institution and take an assignment of the same, and hold both of said mortgages for the use and benefit of the two youngest children of my niece, viz: Robert Walsh and Adaline H. Walsh, but no interest is to be paid on said mortgages by the said Sarah Walsh or Zachariah Walsh during their lives, or the life of the survivor but upon the death of both the same shall become the property of the said Robert and Adaline, or the survivor of them."

The testator gave thirty shares of bank stock, ten shares each to three different persons, and each gift is made, excepting the name of the legatee, substantially in this form: " I give to my friend Mrs. Frances D. Stanwood ten shares of my Essex County National Bank stock."

The preceding statement discloses everything which can be gleaned from the two first testamentary papers—the will and first codicil—tending to show the respective rights, in point of law, of the legatees to whom bank stock, mortgages and specific chattels are given and the legatees to whom general pecuniary legacies are given, in case sufficient assets were not found to satisfy all. Up to this time, it will be observed that the testator has disposed of nothing, by way of residue, except such part of his estate as should remain undisposed of after all his legacies had been satisfied. But his testamentary scheme, in this respect, is radically changed by his second or last codicil. He had disposed of his residuary estate by the twentieth clause or paragraph of his original will. Now, by the last codicil, in place of the residue given by the twentieth clase of his will, he says:

" I give to my executor in trust the sum of $50,000, the interest thereon to be paid to Mary S. Fitch (with whom I am shortly to be joined in marriage) during her life, in semi-annual payments, the first payment to begin a tsix months after my death; and at her decease said $50,000 to go as provided in said twentieth clause; * * * said bequest to be in lieu of dower in my estate. And in case said residue shall not amount to the said sum of $50,000, then I direct that the other legacies (except that to my sister and that to the Cemetery Company) shall abate in proportion, so that at all events the sum of $50,000 shall be available for said purpose."

It is thus seen that the $50,000 which the testator now gives
" in place " of the residue, and which he still calls " said residue,"
he makes his paramount gift, declaring that it shall outrank all
the other legacies except two.    So that the effect of his last codicil
is to change his testamentary scheme from top to bottom, and to
make that first which before was last.    Whether he meant that
the gift of the $50,000 should take precedence of the other lega-
cies for all purposes, and that that sum should, on the death of
his widow, go to a home for respectable aged people of both
sexes, to the exclusion of his other legatees, except the two, is a
question which will not be considered at this time, for no such
home now exists, and it may be none will be established, and as
during the life of his widow the $50,000 must be retained and
kept invested for her use, it is manifest that no attempt should
be made to determine its ultimate destination until the rights of
all persons, in respect to it, are so far matured and settled that a
judgment respecting them may be safely pronounced.

The gift of the mortgage held by the testator himself, and the
three bequests of bank stock, are specific.    That that is their
legal character I do not think is open to discussion.    Any words
which clearly manifest an intention on the part of the testator to
give a specific thing constituting part of his estate, as distin-
guished from all other things of the same kind, and which it
appears he did not use to designate quantity, or to describe the
special character of thing he wanted to give, though constituting no
part of his estate, will make the legacy specific.    Thus a legacy of
stock, as was said by Chancellor Green, in *Norris* v. *Thompson's
Executors, 1 C. E. Gr. 218, 222,* " may be rendered specific by
the use of the term ' my stock,' or the stock or part of the stock
now ' in my possession,' or ' standing in my name,' or ' owned
by me.' "    The same rule will, of course, apply to the bequest
of a mortgage or other security.    The things given by the will
under consideration in the case just cited were stocks and bonds
of two corporations.    They were not described by the testator,
in the bequest, as his stocks and bonds, or as standing in his
name, or as owned by him, but he simply said that he gave a
certain number of shares of the capital stock of a designated cor-

36

poration and so many bonds of another corporation. Chancellor Green held that the legacies were not specific, but a majority of the judges of the court of errors and appeals dissented from this view. *Norris* v. *Thompson's Executors, 2 McCart. 493.* They held that, on looking at the whole will, and reading it with the aid of the light derived from the condition of the testator's estate and the circumstances surrounding him when he made his will, it appeared that it was his intention to give, in kind, stocks and bonds then owned by him, and consequently that the bequests must be adjudged to be specific. The opinion of Justice Van Dyke, reported in *2 McCart. 493,* does not express the view prevailing in the court of errors and appeals, but the opinion of the majority was delivered by Justice Ogden and will be found reported in *1 C. E. Gr. 542.* He said : " The rule respecting specific legacies is not a technical arbitrary rule, to be answered only by the use of particular words and expressions, but is an embodiment of the general principles by which the character of legacies should be tested and determined, each will resting, for correct construction, upon the language employed and established surrounding significant circumstances, if such exist." Tested by this rule, there can be no doubt that the gifts of the mortgage and the bank stock are specific.

It is equally certain, in my judgment, that the testator's direction to his executor to pay off the mortgage held by the Howard Savings Institution and take an assignment of it, is not entitled to be regarded as a specific legacy, but is, at most, a mere direction to invest a certain sum of money in a particular security, and must, therefore, according to the well-settled rule, be held to be a general legacy. The gift, in its essence, is a gift of money, and hence must be regarded, so far as its rank is concerned, as standing precisely on the same footing as the other pecuniary legacies stand.

The decision of the question whether or not the specific legacies stand on the same foundation that the general legacies do, so far as their liability to contribution or abatement is concerned, must, of course, be controlled by the intention of the testator. Both classes of legatees derive their rights from his will, and if

he has plainly declared his intention as to their respective rights, in case of a deficiency of assets, such declaration constitutes not only the standard by which their rights must be measured, but it is also a law unto the court. The whole law of abatement and contribution, as applied to legacies, rests on the intention of the testator, either expressed or presumed. In cases where the testator has not declared his intention, the court proceeds on presumption, and reasons in this wise: that as to those things which he has given specifically, by pointing out particular things belonging to him which certain of his legatees are to take, the presumption is reasonable and just that he meant the legatees of those particular things should have them, in kind, if they still belonged to his estate when his will took effect, whether he left sufficient estate to pay his pecuniary legacies or not; while with regard to gifts of specific sums of money, it is plain that he could not have meant that the persons to whom they were given should have them from his estate unless he left sufficient estate to pay them. But in cases where the testator has declared his intention, his will is the supreme law and fixes unalterably the rights of his legatees. The testator, as I read his will, has done that in this case. By his last codicil, when he gave expression to his final testamentary purposes, he said, in case his residuary estate should not amount to $50,000 " then," to speak in his own words, " I direct that the other legacies (except that to my sister and that to the cemetery company) shall abate in proportion; so that at all events the sum of $50,000 shall be available for said purpose." This clause, paraphrased so as to express the meaning of the testator, plainly and fully, will, I think, read as follows: Every testamentary gift hereinbefore made by me must yield and give way for the purpose of providing a fund of $60,-500—$50,000 for the use of my widow, $10,000 for the use of my sister, and $500 to be paid to the cemetery company—and to effect this end, my will is, that all the other legacies hereinbefore given by me shall abate in proportion. The words that he uses to describe the legacies which he means shall abate are " the other legacies." This phrase, understood in its ordinary sense and according to its full and fair meaning, comprehends all

the other legacies, both general and specific, and unless we as-
sume that the testator used words of description broader than his
meaning, or that he did not mean what he said, we cannot say
that he did not mean that his specific legacies should abate with
the others.    If in fact he meant that they should—and that is
the meaning which his words plainly attribute to him—then a
construction which relieves them, and casts the whole burden of
the deficiency on the general legacies, will frustrate his will and
defeat his intention in an important particular.    The case is one
where the rule of common sense should be applied—where all
doubts must be resolved in favor of the testator's having said
exactly what he meant, and where plain, clear words, understood
in their ordinary sense, must prevail, unless repugnant to other
words used in another part of the will.    In such cases the will
expounds itself, and an intention different from that plainly ex-
pressed cannot be attributed to the testator without making a
will for him.

On the argument, it was suggested as probable that the testa-
tor meant that the legacies of the mortgage and the bank stock
should abate, but not the other specific legacies.    No distinction
of that kind, resting on the basis of legal principle, can be made.
They are all strictly specific in their legal character and stand,
manifestly, on the same foundation in point of law, and must be
dealt with in the same way.    In my judgment, the testator meant
that all his other legacies, both general and specific, should give
way in proportion—that is, equably—in order to provide a fund
of $60,500 for the benefit of the three legatees whose rights he
intended should be paramount to all the others.

The testator has directed that certain legacies, given to infants,
shall be paid to them on their attaining the age of eighteen years.
The complainant asks whether or not it is his duty to pay these
legacies to the legatees before they attain full age.    I think it is
not.    It is the duty of an executor, on paying a legacy, to take
a refunding bond for the protection of creditors.    An infant is
not competent to execute such a bond, but his guardian may exe-
cute it for him.    *Rev. p. 581 § 5.*    A testamentary direction
which contravenes the law, or which, if executed, will deprive

Moore's Exr. *v.* Moore.

creditors of any of their remedies, is without legal force.    Each of the legacies in question should be paid to the guardian of the legatee, or its payment be deferred until the legatee is of full age.

The testator has, in three instances, in making bequests to religious corporations, departed slightly from the names under which they were chartered.    For example, he makes a bequest to the German Theological School located at Bloomfield, New Jersey, when in fact there is no corporation of that precise name, but there is one, having a theological school or seminary at Bloomfield, New Jersey, whose name, as given in its charter, is the German Theological School of Newark, New Jersey.    The description of the legatee, given in the bequests under consideration, is, in each case, sufficiently accurate to enable the court, with the aid of very slight extrinsic evidence, to identify the legatee with entire certainty.    When that is the case the misnomer will not defeat the gift.    *Smith's Executor* v. *Presbyterian Church, 11 C. E. Gr. 132, 139.*    Extrinsic evidence is competent in such cases.    Where a testator gave the residue of his estate to be equally divided between " the board of foreign and the board of home missions," without other or further description, it was held that it was competent to show by extrinsic evidence what corporations were meant, by showing to what church the testator belonged, in what boards, connected with his church, he took an interest, and to which of such boards he was in the habit of contributing.    *Gilmer* v. *Stone, 120 U. S. 586.*    To the same effect is the decision of the supreme court of Massachusetts in *Hinckley* v. *Thatcher, 139 Mass. 477.*    With the aid of the extrinsic evidence in this case there can be no doubt at all about the identity of the corporate legatees.