ATLAS FENCE COMPANY, complainant-respondent,

*v.*

WEST RIDGELAWN CEMETERY et al., defendants-appellants.

[Submitted February 13th, 1932.   Decided May 16th, 1932.]

*Mr. Dougal Herr,* for the appellants.

*Mr. Louis A. Fast, Mr. Harry Lane* and *Mr. Merritt Lane,* for the respondent.

The facts are adequately stated in the conclusions of the vice-chancellor, which follow (see printed case, pages 35-46) :

"Complainant is a judgment creditor of the West Ridge-lawn Cemetery, an association incorporated under the Rural Cemeteries act. *Rev. 1877 p. 100; Comp. Stat. p. 372.* It

brings suit not only for itself but for all other creditors who may join it. The prayer of the bill is that the association may be adjudged insolvent and enjoined from exercising any of its privileges or franchises; that the rights of the complainant and other creditors be ascertained and enforced; that the assets of the defendant be marshalled and administered by the court, and that a receiver be appointed. When the bill was filed, the defendants were ordered to show cause why a receiver should not be appointed and upon the return of that order, argument was had and a receiver appointed *pendenle lite*. The association now moves (by leave of the court) to vacate or modify the order appointing the receiver on grounds which are considered below.

"The affidavits submitted present the following situation: The association was incorporated in 1905 and sometime thereafter acquired a large tract of land in Passaic county for burial purposes. It has sold a number of cemetery plots and retains a large part of its cemetery still unsold. This cemetery land which it still owns, is estimated to be worth about $1,000,000. Between April, 1927, and October, 1930, nine judgments were entered against the association, all still open of record and none apparently paid. The amounts are generally small—$215.90, $505.55, $201.65, $25, $186.10, $235, $350, $359.05, $4,000. A decree for $39,706.29 has been made in a foreclosure suit.

"Upon the judgment for $505.55, execution issued and on July 15th, 1929, the sheriff sold thereunder part of the association's lands for $150. The association brought suit in this court to set aside the sheriff's sale, alleging that the lands sold were worth $24,000. *West Ridgelawn Cemetery* v. *Jacobs, 105 N. J. Eq. 579.* The bill was dismissed and an appeal taken by the association, which is now pending before the court of errors and appeals. On June 3d, 1930, an order was entered in this court pursuant to a supplement to the Cemetery act (*P. L. 1881 p. 158; Comp. Slal. p. 377*), appointing Sidney Alexander receiver to sequester the rents, issues and profits of the association in order to satisfy the judgment for $235. The foreclosure decree which was en-

tered on July 3d, 1930, appointed the Passaic National Bank and Trust Company receiver to sequester the income for the purpose of satisfying the decree. On October 27th, 1930, Dougal Herr was appointed sequestration receiver for the purpose of paying the judgment of $4,000. By the terms of the decree appointing him, the association was restrained from collecting or receiving rents and from selling any lands or paying out any moneys without the leave of this court. The foreclosure decree as well as the decree appointing Mr. Herr receiver, are now pending on appeal in the court of errors and appeals.

"The bill of complaint seems to have been framed for the purpose of obtaining the appointment of a receiver pursuant to section 65 of an act concerning corporations. *P. L. 1896 p. 277; Comp. Stat. p. 1640.* The provisions of that act relating to the appointment of receivers and the winding up of corporations, do not apply to associations formed under the Rural Cemeteries act and do not support the present suit. *Bliss* v. *Linden Cemetery Association, 81 N. J. Eq. 394.* If, however, the bill of complaint presents a case within the general equity jurisdiction of the court, the suit may be maintained; if the circumstances require the services of a receiver pending the litigation, the motion to discharge the receiver must be denied. Counsel for the association relies primarily on sections 8 and 9 of the Cemetery act and on the supplement of 1881 above mentioned. He says that these sections contain a complete plan for protecting the cemetery and at the same time affording judgment creditors ample means of obtaining payment and that they can have no other relief in this court than sequestration pursuant to the supplement. Section 9 applies only to cemeteries of religious societies and not to the cemetery of the defendant association. This section was originally enacted in 1848. *P. L. 1848 p. 9.*

"Section 8 provides 'that the cemetery lands and property * * * shall not be liable to be sold on execution or be applied in payment of debts due from any individual proprietors; but the proprietors of lots or plots in such cemeteries, their heirs or devisees, may hold the same exempt therefrom

so long as the same shall remain dedicated to the purpose of a cemetery.' The effect of this section would be doubtful in my opinion but it has been construed to protect the cemetery lands from sale on execution' against the association. *Spear* v. *Locust Wood Cemetery Co., 72 N. J. Eq. 821.* It does not prohibit execution sales of chattels. *Rosedale Cemetery Association* v. *Township of Linden, 73 N. J. Law 421.*

"Section 8 is substantially the same as section 10 of the Rural Cemeteries act of 1851. *P. L. 1851 p. 254.* Thirty years later, the supplement of 1881 was passed empowering the court of chancery to sequester the rents, issues, profits, incomes and revenues of cemetery lands in order to satisfy judgment debts. This supplement was not intended to restrict the jurisdiction of the court of chancery (assuming that the legislature had power to do so) but to provide an additional remedy. Whatever equitable remedies were available to creditors and whatever authority this court had from 1851 to 1881 to protect and relieve creditors of cemetery associations, still remain unimpaired.

"This court has long enforced legal rights, when the processes of the courts of law have been insufficient to afford adequate relief. Without statutory authority, chancery aids a creditor to obtain satisfaction of his judgment when some legal obstacle interposes to prevent seizure on legal process of the debtor's property. *Hardenburgh* v. *Blair, 30 N. J. Eq. 645.* The issuance of execution is not a prerequisite if the property which complainant seeks to reach is realty. *Vanderveer* v. *Stryker, 8 N. J. Eq. 175.* A legal obstacle which is present in the instant case is section 8 of the Cemetery act, exempting the cemetery lands from sale on execution. This exemption does not include all the lands of a cemetery association but only those brought actually into use as a cemetery. *Spear* v. *Locust Wood Cemetery Co., supra.* The courts of law provide no means of determining what lands may be sold on execution. If the creditor makes the decision himself and the sheriff sells pursuant to his direction, there will be no bidders at the sale, for who can know whether or not the title will be good. Only in this court may the creditor have relief.

"The number of judgment creditors; the presence of three sequestration receivers, each with equal and conflicting powers, are added grounds for this court to assume jurisdiction and in one suit to determine their priorities and their rights in the premises.

"The bill of complaint further alleges that the defendant, Adam Frank, is a trustee of the association; that he dominates the other trustees; and that he is diverting to his own use, funds of the association which ought to be applied to the payment of its debts. The complainant has a standing in this court to prevent such fraudulent conduct, if he can prove it. This allegation, while it helps to support the bill, is not proved by the affidavits, and has not been considered by me on the present motion.

"In my opinion, the bill discloses a cause of action. I turn to the question whether the appointment of a receiver *pendente lite* was justified. Independent of statute, this court has frequently appointed receivers of corporation with very broad powers, where such action has been necessary to preserve the corporate property against the fraudulent acts of the directors or of a majority of the stockholders, or where there was no properly constituted governing body or internal dissension made impossible the successful conduct of the enterprise. Most of the cases are reviewed in *Morse* v. *Metropolitan Steamship Co., 87 N. J. Eq. 217; 88 N. J. Eq. 325; In re New Jersey Refrigerating Co., 95 N. J. Eq. 215,* and *Hill* v. *Dealers Credit Corp., 102 N. J. Eq. 310.* It was said by Vice-Chancellor Church in the *Hill Case,* 'the inherent jurisdiction of the court of chancery is as broad as that of a United States court sitting in equity because each derives that jurisdiction from the same source—the jurisdiction of the high court of chancery of England.' The jurisdiction of the federal courts in equity to appoint receivers of insolvent corporations has been long established, especially in the case of corporations, such as railroad companies, affected by a public interest. *Union Trust Co.* v. *Illinois Midland Railway, 117 U. S. 434; 6 Sup. Ct. 809, 821.* Vice-Chancellor Backes in *Bliss* v. *Linden Cemetery Association, 90 N. J. Eq. 404,* said

that 'cemetery corporations are, in a sense, *quasi*-public service corporations.' The public interest is obvious and is recognized by the legislature both by the grant of the power of eminent domain and by exemption from taxation. In another aspect, a cemetery is a *quasi*-charity. *Bliss* v. *Linden Cemetery Association, 81 N. J. Eq. 394*. This court has an extensive jurisdiction over charities to uphold and enforce them. Vice-Chancellor Howell quoted Perry on Trusts as follows:

" 'In suits for establishing, regulating, controlling or correcting charitable trusts, courts disregard all technicalities; if the case is brought before the court by bill or information, it takes jurisdiction over the administration of the charity, and makes the proper orders and decrees for the right administration of the fund, whether the pleadings are formal or informal, and whether the proper relief is prayed for or not. In charity cases, the most expeditious and least expensive methods should be adopted; and a proper decree for relief will be made, although relief of an entirely different character is prayed for. Courts are not bound by the strict rules of practice in granting injunctions or stay of proceedings at law in such cases.'

"This discussion of the authority of this court to appoint a receiver for a cemetery is probably unnecessary in view of the fact that Vice-Chancellor Howell did appoint one for the Linden cemetery. Counsel for the association says that this precedent should be disregarded because the appointment was made upon the consent of all parties. Consent, however, cannot enlarge the jurisdiction of the court. The Linden receivership in various phases was before the court of errors and appeals on more than one occasion and the authority of chancery to appoint a receiver was never questioned.

"A receivership, however, is not an end in itself. It is merely a tool which the court uses to preserve the subject-matter of the suit and to protect the rights of litigants. The facts present in this case justified, in my opinion, the immediate appointment of a receiver. Either the company is hopelessly insolvent or its management is attempting to defraud its creditors. There are ten judgments outstanding against

the company, two of which have been of record for almost four years; one of the judgments is for only $25. If I assume that the company, throughout these years, has been unable to pay these judgments either by its cash resources or by the use of credit, then obviously it is insolvent. On the other hand, if I accept as true the deposition of the president of the association, in which he states that it owns lands worth a million dollars, then it is equally clear that the management lacks that elemental honesty which requires a debtor to pay his debts when he has the means to do so. It is difficult to believe that the association could not have sold a lot and applied a part of the purchase price to the judgment of $25. I surmise that it failed to do so because it thought that the exemption of its lands from execution made the judgment creditor helpless. Mismanagement of the corporation also appears. It has permitted lands which it says are worth $24,000 to be sold for $150. Such mismanagement not only injures the lot holders but also the creditors.

"The present litigation may be long drawn out. The complainant and the other creditors on whose behalf it sues, need not await final decree before an effort is made to accumulate a fund which may eventually satisfy their claims. Whatever funds accrue during the litigation should not be dissipated by the trustees but should be applied in accordance with the rights of the parties as established by the final decree. The receiver has been appointed, not as a step toward dissolution of the cemetery, but as a means of preserving the project.

"As noted above, three different sequestration receivers have been appointed in order to raise funds for the payment of several judgments. The association suggests that an ample remedy for the complainant is the appointment of a fourth sequestration receiver, thus adding to the present confusion. It seems obvious that such a procedure would be entirely ineffective and would not be of any benefit to the complainant and would be much more burdensome to the lot holders than the appointment of one general receiver who might conserve the property for the benefit of all parties interested, both creditors and lot holders.

"The order appointing the receiver authorized him to sell lots in the cemetery for burial purposes. The association contends that this provision violates the exemption against sale by execution contained in section 8 of the statute. The receiver in the *Linden Cemetery Case* was given like power of sale and did sell a number of lots; the disposition of the proceeds was one of the subjects of controversy before Vice-Chancellor Backes. *90 N. J. Eq. 404.* Even without this precedent, I should consider that the court could vest such power in the receiver. The purpose of the statutory exemption was to preserve the cemetery for burial purposes; to prohibit sales free from the dedication as a burying ground; to prevent the incongruous use of any part of the cemetery— with graves, perhaps, surrounding it. It can make little difference to the lot holders whether other lots are sold by the trustees or by a receiver so long as they are sold for burial purposes only, and subject to the same restrictions that apply to lots heretofore sold. If the association desires that some such provisions be inserted in the order appointing the receiver, I will advise the amendment. Whether or not the order is so amended, sales by the receiver should not be confirmed unless the purchasers are subjected to the same restrictions as are the present lot holders.

"It might also be urged that the lot holders have an interest that the proceeds of sales of lots shall be used for the beautification of the cemetery or invested to establish a fund for perpetual care. At the hearing of the motion, counsel appeared for the Passaic National Bank and Trust Company and stated that this company was trustee for such a fund under an agreement executed many years ago. He added that no money had actually been paid into the fund. No objection was made to this statement and no claim advanced by the association that it had ever set aside a dollar for perpetual care. As all the income of the company which, I take it, includes profits from the sale of lots, has already been sequestered in three suits, the lot holders are not put in a more disadvantageous position by the appointment of a receiver in the present suit than they have heretofore occu-

pied. Lastly, it is urged that the trustees elected by the lot holders may pick and choose the persons to whom they shall sell lots and that a receiver might sell to one whom the trustees might not consider a desirable lot holder. Such an objection is fanciful in view of the fact that by agreement dated March 30th, 1926, the association delegated to another association, the King Solomon Cemetery, the exclusive right to sell lots and plots in the West Ridgelawn Cemetery. Furthermore, this particular objection cannot be heard until the association discloses other sources for the payment of its debts.

"The ordinary business of the West Ridgelawn Cemetery is the sale of lots for burial purposes. In such sales is its only source of income for current expenses, its only hope of deriving money with which to pay its debts or beautify its grounds or to establish a fund for perpetual care. The trustees apparently stopped selling lots some time ago, perhaps to prevent funds from coming into the hands of the sequestration receivers. If the receiver is not given this power, the failure of the cemetery project seems certain, the purpose of the state in creating the defendant will be frustrated, and the present lot holders will find their lots untended in the midst of rough, neglected fields. The power of sale does not, in my view, violate the statutory exemption and, since it is a necessity of the case, it will not be withdrawn.

"A receiver *pendente lite* usually has no power to sell real estate, and for this reason, his function is to preserve the *corpus;* real estate ordinarily is not a current asset but is a fixed asset, the sale of which is a long step toward winding up and liquidation. Such is not the present case; here the sale of lots is necessary to keep the enterprise alive.

"It may be that prospective lot purchasers will question whether the receiver can give good title, and so will not buy from him. That difficulty, if it arises, may be met by requiring the association, by its officers, to join as a grantor.

"It was stated in argument that within the bounds of the cemetery are large plots which have not yet been devoted to cemetery uses and which can be sold free from the dedica-

tion in the manner pointed out in *Spear* v. *Locust Wood Cemetery, supra.* It also appeared that land as a part of a cemetery is worth, for burial purposes, several thousand dollars an acre, while it is only worth a few hundred dollars an acre if sold for other uses; as part of the cemetery, its value is greatly enhanced by the franchise. The sale of land for ordinary purposes would result in a great and unnecessary loss not only to creditors but to lot holders; it would be a ruinous policy and will not be approved if it can be avoided.

"The order appointing the receiver enjoined the association from exercising any of its privileges or franchises. No objection has been made to this part of the order. It is probably too broad; if counsel for the association desires modification so as expressly to permit the association to carry on the litigation in which it is involved, to hold its corporate meetings, &c., it may be so modified.

"The motion to discharge the receiver or to strike from the order appointing him the authority to sell lots, will be denied."

The opinion of the court was delivered by

PARKER, J.

The conclusions of the vice-chancellor show quite plainly the utter confusion in the affairs of the cemetery corporation which existed at the time those conclusions were filed, in May, 1931. We may add that the foreclosure decree of $39,706.29 was appealed to this court, but the appeal is listed as No. 130 at the present term and has not yet been reached for argument. In the *Jacobs Case,* after dismissal of the bill, an amended bill was filed and on the advice of Vice-Chancellor Berry, the sale was set aside. *108 N. J. Eq. 513,* decided July 13th, 1931.

The judgment of $4,000 or thereabout, recovered by one Safir, was appealed to this court and affirmed February 1st, 1932. *Safir* v. *West Ridgelawn Cemetery, 108 N. J. Law 315.*

The appointment of a receiver in sequestration to collect that judgment was also appealed, and affirmed with modifica-

tion in *Gottlieb* v. *West Ridgelawn Cemetery, 109 N. J. Eq. 585.* We agree heartily in the conclusion of the vice-chancellor that notwithstanding the immunity of a cemetery from taxation, assessment, execution, and perhaps other liabilities to which ordinary persons and property are subjected by law, the case yet calls loudly for administration of the affairs of this defendant by a general receiver empowered to continue it as a going concern and put a stop to the probable diversion of its cash receipts from creditors who are by law deprived of the usual methods of collecting their claim. And this applies not merely to large creditors who can presumably afford to litigate but particularly to small ones who cannot. On this point the list of seven judgments, the smallest of which is only $25 and the largest just over $500, is illuminating. That a cemetery in existence since 1905, apparently well placed and well known, should default on ordinary current expenses, as is shown by the case before us, points to gross mismanagement somewhere.

Insolvency is patent, and if this were a case to which the Corporation act applies, there would be no difficulty whatever in affirming the orders under review. We agree with the vice-chancellor that it does not apply; and so the question is whether the court below erred in doing as it did.

The situation on the record should be noticed for a moment. The order first appointing a receiver was made on March 25th, 1931. Appeal from that order should have been taken within forty days (Chancery act of 1902, section 111) or at latest, by May 4th. No appeal from that order was taken at any time. Instead, there was a motion noticed for April 8th, to vacate the temporary appointment for several stated reasons, or in the alternative to modify it, or stay it pending appeal. Just when this motion was argued does not appear, but on May 5th, he made the two orders brought up by this appeal: the first, denying the motion to vacate or modify; the second, allowing an amended bill, admitting two new parties complainant, and directing that the receiver appointed on the original bill be continued on the new bill with all the powers conferred by the former order of appointment.

In the interests of clarity, it may be as well to state in advance of detailed discussion the conclusions that we have reached, and then give the reasoning and authorities that in our judgment support them.

1. The West Ridgelawn Cemetery corporation is a charitable trust.

2. As such charitable trust, it is under the peculiar control of the court of chancery, which has the special jurisdiction of supervising and administering trusts of all kinds.

3. In cases where a trustee is found to be violating his trust, the court of chancery may in its discretion and under its general equity powers appoint a receiver to administer the trust.

4. The present case shows a clear and flagrant violation of the trust obligations resting on the cemetery corporation and its agents.

5. Certain statutes invoked by appellant are deemed ineffective to limit the inherent power of the court of chancery to compel the proper administration of the trust in question.

That a public cemetery organized under out statute (*Comp. Stat. p. 372*) is a charitable use we think is clear. It is true that this court, in *Attorney-General* v. *Linden Cemetery Association, 85 N. J. Eq. 501, 507,* reserved its opinion on the point, which the late Vice-Chancellor Howell, in the same case, had expressly decided (*Bliss* v. *Linden Cemetery Association, 81 N. J. Eq. 394, 396*), and the late Vice-Chancellor Stevens had twice suggested. *Corin* v. *Glenwood Cemetery, 69 Atl. Rep. 1083* (not officially reported); *East Ridgelawn Cemetery Co.* v. *Frank, 77 N. J. Eq. 36.* In the *"Old Burying Ground" Case, Stockton* v. *Mayor, &c., of Newark, 42 N. J. Eq. 531,* Chancellor Runyon held that there was a charitable trust; and on appeal, this court, while reversing the decree, took occasion to express its entire concurrence in that view. *44 N. J. Eq. 178, 183.* We cannot perceive any substantial difference in the use, between a public burying ground conveyed for burial purposes to a municipality, and a burying ground owned and operated by a cemetery corporation under our statute. In the *East Ridgelawn Case, 77 N.*

*J. Eq. 39,* the vice-chancellor points out the provisions of the statute committing the management of a cemetery to trustees elected by the lot owners; exempting the lands from taxation and assessment; making lots generally inalienable after an interment therein; conferring limited powers of eminent domain; authorizing the holding of property real and personal, upon trust to apply the income to the improvement and embellishment of the grounds; and the investment of proceeds of sale of lots for the same purpose; and directing by law the application of all proceeds of sale of lots to paying for the property, putting and keeping it in order, improving and "embellishing" it, and for "incidental expenses." In short, there is to be no stock as the word is generally used (*Ransom* v. *Brinkerhoff, 56 N. J. Eq. 149*), and the receipts belong to the corporation for the purposes stated in the act, and not to the promoters, officers or other individuals not creditors. So where, in the *Linden Case, 85 N. J. Eq. 501, supra,* the attempt was to create a speculative value in certificates issued to the seller of lands to the cemetery, by enabling him to participate in the rising value of lots, the court held him to a value of certificates based on the value of the land at the time he sold it to the cemetery.

In *Moore's Executor* v. *Moore, 50 N. J. Eq. 554,* Vice-Chancellor Van Fleet (at *p. 558*), used this language: "In construing this statute, it is important to remember that the corporations, whose capacity the legislature were defining, are endowed with immortality for the purpose of providing places of burial for the dead, where their dust may rest undisturbed and inviolate forever, and that the use of any part of their lands by the owner of a lot or plot, for the burial of the dead, withdraws such lot or plot from all the ordinary uses to which land may be put, and renders it inalienable forever thereafter except as a place of sepulture. *Rev. p. 102 § 11.* This legislative declaration gives impression to a sentiment common to mankind. The place where the dead are buried is regarded generally, if not universally, hallowed ground. We express our love for our dead by placing their bodies in the earth tenderly and sorrowfully; we try to perpetuate their

memories by the erection of monuments, and we give expression to our veneration for their dust by adorning and beautifying the spot where it reposes. Their dust is sacred to us. Our reverence for it creates a strong natural desire that it shall never be disturbed or desecrated, and that the place where it rests shall be regarded as consecrated ground and its beauty preserved until the end of time." The question he was considering was whether a legacy to a cemetery corporation for the purpose of forever keeping in order the testator's lot therein, was void as in contravention of the statute of perpetuities, as of course it would be in the case of a non-charitable use, unless excepted by statute from the perpetuity rule, as the vice-chancellor held it was. Section 7 of the Cemetery act (*Comp. Stat. p. 374*), which dates back to the act of 1851 (*Nix. Dig. (1868) 100 § 9*), permits a cemetery association to accept gifts or legacies in trust to use the income for the improvement, maintenance, &c., of the cemetery, or of the lot of any proprietor, or any tomb, monument, fence, &c. This seems to have been re-enacted in 1878 (*P. L. p. 209; Comp. Stat. p. 377 pl. 14*) ; and there is a line of cases holding that while in general a legacy for perpetual maintenance of a private burial lot is void, such a legacy to a public cemetery is good, and (under the act) even when limited to a particular lot therein. *Detwiller* v. *Hartman, 37 N. J. Eq. 347; Hartson* v. *Elden, 50 N. J. Eq. 522; Moore's Ex'r* v. *Moore, supra; In re Corle, 61 N. J. Eq. 409; Hilliard* v. *Parker, 76 N. J. Eq. 447.* These cases, because of the statute, are naturally not determinative of the question of charitable use; but it may well be considered that unless the legislature had regarded a public cemetery as a charitable use it would not have authorized it, as it did, to receive general gifts in perpetuity for its general maintenance as a cemetery.

Finally, in the comparatively recent case of *Dennis* v. *Glenwood Cemetery, 96 N. J. Eq. 399,* Vice-Chancellor Foster dealt with the questions before him from the standpoint of a charitable trust to be administered. On page 403 he speaks of a cemetery association in express terms as a chari-

table use; and in affirming the decree, we adopted his conclusions as "sound."

2. We conclude then, that the defendant corporation is a charitable trust. That point settled, the proposition that it is subject to the jurisdiction of the court of chancery in that aspect, requires no discussion. *Attorney-General* v. *Moore's Ex'rs, 19 N. J. Eq. 503.*

3. The next question, which we answer in the affirmative, is whether in a proper case chancery may appoint a receiver to administer a charitable trust, under its general equitable power. That such jurisdiction exists touching maladministered trusts generally, seems clear. *Pom. Eq. Jur.* § *1334; Leddel's Ex'r* v. *Starr, 19 N. J. Eq. 159.* After all, if a trustee misbehave, equity may and will remove him and appoint another; and a receiver in a case like this is in effect a temporary substituted trustee. In the *Linden Cemetery Case, supra,* a receiver was appointed by consent. In the case at bar, Vice-Chancellor Bigelow considered, following the first report of the *Bliss Case,* that a receiver could not be appointed by virtue of the Corporation act, and while the point probably need not be decided, we incline to concur in that view; but we also agree that in a proper case a receiver may be appointed under the general equity powers of the court.

4. The case at bar is conspicuously such a proper case. A glance at the bill and at the conclusions of the vice-chancellor will suffice on this point. No corporate meetings for years; failure to do anything to keep the grounds in order; failure to pay even the grave diggers; no books kept; no one on the ground to attend to funerals; business handled, so far as it is handled at all, at a lawyers' office in New York; judgment after judgment for wages and current supplies; three receivers in sequestration; a large mortgage under foreclosure; moneys apparently embezzled. The affidavit of Braverman, a certified accountant, indicates an unlawful deduction, perhaps an abstraction, of twenty per cent. of moneys received from sales. The affiant states that "in all his experience of some twenty years, he has not found a more

deplorable condition in so far as the absence of regular books is concerned." He was obliged to make up such account as he could make, from "a mass of loose data, such as checkbook stubs, canceled checks, available contracts, letters and other memoranda, both of Adam Frank personally and the cemetery, and records which were delivered to me." A more flagrant case of breach of trust it would be difficult to imagine.

5. Some eighteen pages of appellant's brief are devoted to the proposition that "the order appealed from constitutes an unconstitutional usurpation by the court of the exclusive function of the legislature." The general trend of the argument is to this effect: that cemetery lands are by statute immune to judgment and execution, certainly so far as used for cemetery purposes; that in 1881 (*P. L. p. 158*) it was enacted that "the rents, issues, profits, income and revenues derived from" cemetery lands may be sequestered by the court of chancery to satisfy judgments; but that the lands themselves may not be sold for that purpose. Hence, it is argued, the court of chancery is overriding and express statute by appointing a general receiver. But this, we think, is clearly a *non sequitur*. The bill, as amended, rests on two theories. The first is that the corporate trustee of a charitable use has been false to its trust, and the *cestui* lot owners apply to the court to have the trust properly administered until such time as the trustee corporation is fit to resume its duties. The second is that by the statute the moneys received from sale of lots are devoted, among other things, to the payment of what the statute calls "incidental expenses" which would include keeping the grounds in order, repair of buildings, care of monuments and lots, and so on. These should have been paid: they were not paid and some are in judgment; the creditors, like the *cestuis,* are entitled to insist that these current expenses shall be paid. The act of 1881 is not exclusive of the general equity powers of the court of chancery. If it were, it would be to that extent unconstitutional, and an infringement by the legislature on the province of the court. *Constitution, Article X, Paragraph 1; Hedden v. Hand, 90 N. J. Eq. 583.*

An important practical consideration is that of economy in administration. At present three separate receivers in sequestration are in office by authority of the court pursuant to the act of 1881. In addition, the trustees are ostensibly in office, and one of them is attempting to control the cemetery. Nothing but confusion and ruin can come of such a situation, and a general receiver who will supersede all these conflicting claimants is the obvious answer.

So far, therefore, as relates to the power of the court of chancery to appoint a general receiver to take exclusive charge of the affairs of this corporation and carry it on as a charitable trust, and the propriety, not to say necessity, of making that appointment, we are in accord with the general views of the vice-chancellor. The difficulty is with the procedure. Where a charitable use is involved, the attorney-general should be brought in. *Bliss* v. *Linden Cemetery Association, supra; Trenton Society for Organizing Charity* v. *Howell, 63 Atl. Rep. 1110.* It does not appear that he is a party. It is not clear that the other parties named had been served with process. Failing these requisites, the court should not have appointed any receiver with general powers, but at best a temporary receiver, until the parties, particularly the attorney-general, could be heard.

The orders under review, so far as they appoint a general receiver, will be reversed, but without prejudice to such appointment when jurisdiction over necessary parties shall have been perfected.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ.  14.