39 N.J. Super. 309 (1956)
120 A.2d 875
JAMES D. MOORE, SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF HERMAN WALKER, DECEASED, ETC., ET ALS., PLAINTIFFS-APPELLANTS,
v.
FAIRVIEW MAUSOLEUM COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1956.
Decided March 2, 1956.
*311 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John H. Jobes argued the cause for the plaintiffs-appellants.
Mr. George A. Brown argued the cause for the defendants-respondents (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. Francis V.D. Lloyd, of counsel).
*312 The opinion of the court was delivered by FREUND, J.A.D.
The Fairview Cemetery Company was incorporated in 1901. By 1926 its control had passed to one Rutherford H. Walker, who was also in control of the Hudson Heights Realty Company. In 1926 the defendant herein, the Fairview Mausoleum Company, was incorporated for the purpose of acquiring from the Mausoleum Company of America, Inc., land contiguous to the Fairview Cemetery for the erection thereon of a public mausoleum. The consideration was to be 1,000 shares of the capital stock of the Fairview Mausoleum Company. The Mausoleum Company of America, Inc., was then in the hands of receivers who, by court order, were bound to convey the premises in question to Walker and his company, the Hudson Heights Realty Company.
The mausoleum structure was erected at a cost of approximately $1,000,000. Crypts were sold and bodies interred therein. Then, in 1936, both the Fairview Cemetery Company and the Fairview Mausoleum Company became insolvent, and James D. Moore and William F. Burke were appointed receivers and trustees for both corporations. Walker went bankrupt a few days later. Thereafter, there was litigation regarding the cemetery corporation, Burke v. Gunther, 128 N.J. Eq. 565 (Ch. 1941), affirmed 133 N.J. Eq. 609 (E. & A. 1943).
Since 1936 the receivers have continued to operate the Fairview Mausoleum Company, have succeeded in paying off all creditors, secured the conveyance of the land which had not previously been done, and upon the filing of their fifteenth and final account, petitioned to be discharged. Their account was approved and allowances made. However, to ensure a proper determination of the interests of all parties, crypt owners as well as stockholders, it was deemed necessary that the receivers be continued pending the report of a master appointed to make an investigation and to duly report thereon.
The petition filed by the receivers for settlement of their final account revealed that although the Fairview Mausoleum *313 Company, in consideration of the issuance of 1,000 shares of its capital stock, was to have had conveyed to it the land upon which the mausoleum was erected, the stock had never been issued nor the land conveyed; that corporate records had not been maintained; further, and most important, there had been no compliance with the statutory requirement that a trust fund be set up for the perpetration of the mausoleum structure.
The pertinent statute, R.S. 26:6-46, provides;
"No structure constructed or erected under the provision of this article shall be used for the interment or depositing therein of a dead body until a trust fund shall have been established and set apart in accordance with the laws regulating trust funds in this state, of not less than ten per cent of the total cost of the structure. The interest on the trust fund, and the interest only, shall be used for the perpetration of the structure. This section shall not apply to private mausoleums or temporary receiving vaults."
The master reported that the board of directors of the Fairview Mausoleum Company had shown a complete disregard of the interests of crypt owners, of the general public, and of the requirements of the laws of New Jersey. He recommended that the corporation be dissolved and, further, the establishment of a trust fund of $400,000, sufficient at today's investment return to yield the $12,000 per annum which he considered necessary for proper maintenance and repairs to the mausoleum structure; that the remaining assets of the mausoleum company, consisting of unsold crypts, be sold at public sale for not less than $400,000 to create such a trust fund, any excess to be paid to the stockholders; that if no such bid was forthcoming, the assets be conveyed to and administered by a crypt owners' association to be formed; and that from the proceeds of sale of unsold crypts, after payment of expenses and fees incurred in the pending cause, the trust fund of $400,000 be first created, any moneys thereafter accruing in excess of operating expenses to be payable to the stockholders. The master's report was approved, and the present appeal was taken from the order duly entered thereon.
*314 The appellants, stockholders of the defendant corporation, argue that a trust fund of only 10% of the cost of the mausoleum, i.e., approximately $100,000, is required to be set aside to satisfy the statutory requirement; that the rights of the crypt owners are not paramount to the rights of the stockholders, and that hallowed ground cannot be sold at public sale.
It is well settled that a cemetery dedicated for the burial of the dead is a charitable or public trust. Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. 1932); Parker v. Fidelity Union Trust Co., 2 N.J. Super. 362, 388, 390 (Ch. 1944); East Ridgelawn Cemetery v. Winne, 11 N.J. 459 (1953). Here involved is a building where human remains are placed in crypts or niches. Such a method of disposing of human remains is not so disconnected from the function of a cemetery as to be a non-cemetery use. R.S. 26:6-42 et seq.; Moore's Ex'r v. Moore, 50 N.J. Eq. 554, 558 (Ch. 1892); Ewing Cemetery Ass'n, Inc., v. Ewing Twp., 126 N.J.L. 610 (Sup. Ct. 1941). The operation and maintenance of defendant's mausoleum partakes of the sacred nature of a cemetery and, hence, is likewise a charitable trust. Passaic Nat. Bank & Trust Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603, 607 (E. & A. 1945).
The appellants, although conceding that the mausoleum is a charitable trust, argue that the maintenance fund required by statute is limited to 10% of the cost of the structure, that "not less than" as used in R.S. 26:6-46 is to be construed as "equal to," citing Stewart v. Lehigh Valley R.R. Co., 38 N.J.L. 505, 517 (E. & A. 1875), in which it was held that "equal to" means "not less than." Their contention is without merit. It is quite evident that the legislative intent was to establish a minimum. Cf. United States v. Binghampton Construction Co., Inc., 347 U.S. 171, 74 S.Ct. 438, 98 L.Ed. 594 (1954). In effect, the appellants would have us construe the words "not less than" to mean "not more than"  a sophism nowhere supported. The statute in question is primarily concerned with public health  *315 indeed, it is included in the "Health and Vital Statistics" title of the Revised Statutes. We interpret the reference to 10% of the cost as representing only the legislative judgment as to the minimum for a trust fund without which such a project should not be permitted to operate in the interests of the public health. It was not a determination that a larger amount might not be necessary in some particular contingency to carry out the essential trust function of the perpetration of the structure.
The appellants argue that the rights of the crypt owners are not paramount to those of the stockholders. The trial court held the rights of the crypt owners paramount since they have a vested right to the trust fund required to be established by R.S. 26:6-46. Dennis v. Glenwood Cemetery, 96 N.J. Eq. 399, 404 (E. & A. 1924). It is to be borne in mind that the owners bought their crypts or niches on the supposition that the statutory requirement of a perpetual maintenance fund had been complied with  they have paid their money for space in the mausoleum and have buried their dead therein on such reliance. On the contrary, the stockholders failed to establish any trust fund; they sold crypts to third persons without any assurance for perpetual maintenance of the mausoleum structure. In so doing, they flagrantly violated their trust obligations. The crypt owners, by virtue of having paid for space in the mausoleum on the basis of provision having been made for perpetual maintenance of the structure, have to that extent become creditors of the mausoleum company. Perpetual maintenance is due them before the equitable interest of the stockholders as owners receives consideration.
From the above, the involvements of cemetery litigation are quite apparent  the rights of different classes, the necessity for perpetual care and maintenance, the requisite amount to be set aside to provide such perpetual maintenance amid changing economic conditions. In his report the master recommended that a trust fund of $400,000 be set aside in order to provide, at 3% interest, an annual income of a minimum of $12,000 which he considered necessary. *316 Aside from the fact that to set up such a fund from the proceeds of the sale of crypts remaining unsold, estimated to be valued at from $700,000 to $820,000, would require many years, there is no assurance that such an amount would, on a permanent basis, provide the necessary return. Costs of maintenance may increase. On the other hand, it may be possible to secure a yield greater than 3%, so that less than $400,000 would be required to produce the maintenance and repair figure of $12,000 per year. It, therefore, appears that the amount of the trust fund to be set up from the proceeds of sales of crypts must be flexible and should be determined by order of court upon periodic reports. The mausoleum corporation, being a charitable trust, is under the peculiar control of the Chancery Division, which has the special jurisdiction of supervising and administering trusts of all kinds. De Geeter v. Wolkin, 136 N.J. Eq. 510, 512 (E. & A. 1945).
Since it appears unlikely that the sum of $400,000 could be realized by public sale of the mausoleum at this time, its management in such event should be determined. The master recommended that in such case the assets of the corporation be turned over to the crypt owners; but such an arrangement would leave the stockholders with no voice whatsoever. While, as heretofore indicated, at the moment the interests of the crypt owners to the extent of an adequate maintenance fund are paramount, eventually the stockholders may have some tangible equity in the assets of the mausoleum corporation. Even if equitable, equal representation in management at this time might present administrative difficulties. Accordingly, we deem it equitable that the affairs of the mausoleum be administered by a board of trustees consisting of seven crypt owners and three stockholders, subject to modification by the court from time to time as to ratio, as by enlargement of the trust fund the relative interest of the stockholders in the assets may increase.
One other consideration requires attention. No disposition of this matter can be tolerated which contemplates a profit for the stockholders over the original investment *317 plus ordinary interest thereon, as this is a charitable trust in the nature of a trust for the sepulture of the dead, in the administration of which a private profit would be unlawful. See Burke v. Gunther, supra (128 N.J. Eq., at page 571). We think there is no essential difference between a charitable trust through the medium of an association organized under the Cemetery Act, R.S. 8:1-1 et seq., and a public trust involved in the operation of a mausoleum, the consecrated objects of both as places for the interment of the dead being the same. Notice the express provision for exemption from taxation of mausoleums in the same statutory provision which exempts cemetery lands, R.S. 54:4-3.9; and see Atlas Fence Co. v. West Ridgelawn Cemetery Co., supra (110 N.J. Eq., at page 593). This consideration is not to be forgotten merely because the Legislature apparently overlooked the necessity of providing for the administration of mausoleums by means of an association not for pecuniary profit, as in the cases of cemeteries proper.
The record before us is barren of any information as to the financial investment of the stockholders in the property. Burdened as the corporation presently is, that question is perhaps academic. If and when any surplus appears over and above the amount needed for the creation of the trust fund, the stockholders will be required to establish the amount of the investment in the property represented by their shares. In the meantime, it will suffice to have the interest of each shareholder expressed either fractionally or percentage wise with respect to such surplus, the relative interest of each to be evidenced by appropriate certificates to be issued by the trustees of the mausoleum. East Ridgelawn Cemetery Co. v. Frank, 77 N.J. Eq. 36, 40 (Ch. 1910); Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580, 592 (E. & A. 1932).
Finally, the objection by the appellants that the property may not be sold as provided for in the judgment under appeal is not well taken. This is not a sale under execution or one involving the desecration of the resting place of the dead. It is in aid of the administration of the trust *318 in the hands of the court and for the purpose of preserving the mausoleum as a perpetual and undisturbed resting place for the remains of those now interred there, as well as those to be interred. See Atlas Fence Co. v. West Ridgelawn Cemetery, supra, 110 N.J. Eq., at page 587.
The judgment of the Chancery Division is modified in accordance with the views herein expressed.