This matter comes before me on a rule to show cause why a bid of one, Aaron Sacks, should not be accepted. The bid filed with the receiver is for fourteen and one-half acres of land of the West Ridgelawn Cemetery situate in the city of Clifton, Passaic county, New Jersey. This fourteen and one-half acres had been sold for taxes and a deed delivered therefor before the appointment of the receiver. After the receiver was appointed under proceedings instituted by him the deed was set aside and the fourteen and one-half acres recovered. Mr. Sacks offers to pay $35,000 in installments over a period of four years and has deposited with the receiver, I understand, the sum of $3,500 as evidence of his good faith to carry out the bid. The bid acknowledges that the lands asked to be conveyed are dedicated for cemetery purposes and are controlled by the franchise of the West Ridgelawn Cemetery. In other words, the lands if conveyed under the offer will still be subject to the said franchise and will be used for non-sectarian burials subject to the rules and regulations now or hereafter in effect governing the West Ridgelawn Cemetery. In addition to the payment of $3,500 the bidder also agrees to expend for improvement of the fourteen and one-half acres of said cemetery within one year the sum of at least $7,500 among which improvements shall be included the repairing of the chapel now erected on the fourteen and one-half acres, which chapel is to be for the benefit of all lot owners of the cemetery. The bidder also agrees in addition to the payment of the aforesaid sums that there shall be retained from the sale of all lots the sum of six cents per square foot for the perpetual care fund to be used for the perpetual care of the said fourteen and one-half acres which *Page 241 
fund shall be turned over to the trustee or its successor. The offer also provides that the sum of at least $3,000 a year for the said four years shall be paid together with interest at four per centum on the balance due. The balance of said principal, however, to be paid at the end of the fourth year with interest as aforesaid. The bid contains other conditions which are not necessary to be set forth.
Upon the return of this rule counsel for Edward Herman stated that he submitted a bid for the fourteen and one-half acres. His bid is in the name of Manher Realties, Incorporated. This bid is $35,000, $3,000 to be paid at the time of the signing of the contract and the balance at the rate of $4,000 a year with interest at five per centum covering a period of five years; the balance to be paid at the end of that time. This bidder agrees to repair the chapel and expend the sum of $7,500 in improvements. No perpetual care fund is to be set up under it.
Another bid presented at the same time was that from Ernest Kurzrok. Mr. Kurzrok was formerly a salesman of the company. His bid offers to use $5,000 for improvements and repairs for which the bidder is to have a deed for two acres of cemetery land held in escrow by someone designated by the court for a period of two years upon the condition that unless the bidder sells $25,000 worth of lots within said two years he is to forfeit the money so deposited and receive the deed for the two acres, and if the $25,000 worth of lots are sold he is to be reimbursed for the $5,000 out of the said sales. The board of trustees is to be elected under the direction of this court to control the cemetery and the lots are to be sold subject to their approval. The bidder to receive ten per centum of the purchase price. The bidder agrees that in six months he will sell $25,000 worth of lots and within three weeks from the date of the acceptance of his offer he will sell $15,000 worth. Ten per centum of the money received from sales to be used for repairs and improvements. All plots sold shall be free and clear of all encumbrances.
During the discussion of these bids Mr. Harry Lane, counsel for William Bittles, the mortgagee, stated that Mr. Bittles *Page 242 
would agree to expend the $7,500, as was proposed under the bid of Mr. Sacks, and surrender his mortgage covering the entire cemetery upon a deed for the said fourteen and one-half acres under practically the same conditions as that submitted by Mr. Sacks, thus leaving the balance of the cemetery free and clear of the mortgage. A perpetual care fund is set up under the Bittles' bid. In view of this proposal I laid over the determination of the acceptance of a bid until the bid of Mr. Bittles could be presented. This bid was presented to the receiver sometime in November, 1935.
I have carefully considered the bids before me which were presented to the receiver or made in open court. I see little benefit to the cemetery if the bid of Mr. Kurzrok is accepted. It is highly speculative and depends entirely on the ability of the company to make sale of the lots. This matter has been in the hands of the receiver for four years or more and the lots and land sold have been negligible. The cemetery is in very bad condition and the chapel is in a poor state of repair. On account of the highly speculative offer I have decided to reject it. I have also decided to reject the offer of the Manher Realties, Incorporated, for the reason that the offer is no better than that of Mr. Sacks on which the rule to show cause is based, and for the further reason that while the solicitor for the Manher Realties, Incorporated, stated that he could obtain a deposit to be turned over to the receiver as evidence of good faith it did not accompany his bid. I have given very careful consideration to the bid of Mr. Bittles. There is some merit in that bid in that it discharges the mortgage from the lands belonging to the cemetery. The solicitor of Mr. Sacks indicated to the court that he intends to develop the fourteen and one-half acres in good faith and in such manner as will make more valuable the balance of the cemetery lands which contains about sixty acres. Counsel for the receiver argues that Mr. Bittles was mainly interested in the development of the East Ridgelawn Cemetery which is in the same locality and a competitor of the West Ridgelawn Cemetery. I am inclined to feel under the circumstances and from the statement of counsel for Mr. Sacks that if his bid *Page 243 
for the fourteen and one-half acres is accepted he will shortly be in a position to develop the balance of the cemetery lands. It was contended by some of the counsel appearing in this matter that the fourteen and one-half acres was worth about $100,000. The Sacks offer is to pay $35,000 for the land, to expend at least $7,500 in improvements and to pay six cents a square foot into the perpetual care fund which would ultimately amount to around $38,000. Taking into consideration the $35,000 paid for the land and the $38,000 paid into the perpetual care fund the amount by which the cemetery would benefit would be approximately $73,000. Counsel for Mr. Bittles objects to the Sacks bid on the ground that the most valuable part of the cemetery is being disposed of, and submits a bid of his client offering to purchase the same land. He also objects to the Sacks bid on the ground that part of the cemetery cannot be sold separately and contends that the cemetery should be sold as a whole. I think this question has been decided by the court of errors and appeals in the case of Atlas Fence Co. v. West Ridgelawn Cemetery,110 N.J. Eq. 580. It seems to me that the Sacks offer, in view of all the circumstances in the case, is fair. Another objection to the offer is that this cemetery is dedicated to Jewish burials. I find nothing in the charter which so provides nor do I find that the cemetery, before the receivership, was used exclusively for Jewish burials. Certain portions, however, have been used for that purpose. I, therefore, see nothing in this point for the reason that the bidder agrees that it should be continued for non-sectarian burials and also shall be subject to the franchise and to the rules and regulations of the cemetery association. Another objection to the offer is made by counsel for Mr. Bittles because the mortgage held by Mr. Bittles now amounts to around $55,000 and is increasing every day by reason of the accumulation of interest. I think there is some merit in counsel's contention that the proceeds of this sale, if the bid is accepted, should not all be used for administration purposes. I will approve the offer with a provision therein that at least half of the $35,000 to be paid, is set aside for the purpose of applying the same on the mortgage. *Page 244 
The condition of the cemetery has grown steadily worse since the appointment of the receiver. Interest has been running on the mortgage. Three acres have been lost by reason of a tax sale foreclosure. A large portion of the land has been sold for taxes which certificate is now held by the Harrington Company and under process of foreclosure and unless some money is raised to redeem these tax sale certificates a large portion of the land will be lost to the association. The chapel is in such condition that it cannot be used. There is no one in authority caring for the property, the stones or the graves. There is no perpetual care fund and the objectors apparently would have the cemetery continue to lie dormant and conditions to grow worse. The receiver has no funds and none of the interested parties are willing to advance funds for the purpose of improving or caring for the premises. The receiver has been unable to sell lots or small portions of the cemetery. I understand he made but one sale of a small portion for $5,000 several years ago. I have, therefore, reached the conclusion that this offer should be accepted. It is contended by some counsel opposing the acceptance of the offer that such a sale would be a speculation and not a charitable use of the premises. I do not agree with this contention. It seems to me that if this is to be continued as a charity, and it is the receiver's duty to so continue it, funds must be obtained from some source to pay the obligations outstanding against the cemetery and to beautify and improve it so that persons will be attracted to purchase lots and make use of the cemetery. People will hesitate to purchase lots for burial purposes unless they are assured that a perpetual care fund will be set aside for the purpose of maintaining and beautifying the cemetery. It appears to me from all the arguments in the case that the persons opposing the acceptance of the offer are doing so either for the purpose of destroying the cemetery or for the purpose of speculating themselves in the hope that they will be able to profit financially in the end. This property has been before the courts of this state for years and it seems to me about time some real constructive plan be developed for *Page 245 
the purpose of caring for and maintaining the graves already existing there and for the purpose of removing the liens and obligations which now exist against the cemetery.
I have investigated the Sacks bid and have learned that those backing it are financially responsible and men of business ability. I will, therefore, advise an order accepting the bid if the same is presented in accordance with these views.