The appeal is from an order dated December 10th, 1930, advised by Vice-Chancellor Berry (without opinion, so far as shown by the printed case before us) wherein the lands of defendant cemetery association known as the Montefiore Cemetery, were directed to be sold by the receiver of that association theretofore appointed. As a matter of chronology the bill in this cause was filed June 24th, 1930, by the treasurer and a creditor of the corporation, charging insolvency, mismanagement, dissension in the board of trustees — threatened foreclosure of a mortgage, c., and praying injunction as to the corporation and its creditors, and a receiver to administer and liquidate its affairs. On the same date Simon L. Fisch was appointed custodial receiver pro tem.
and the attorney-general and certain individuals including Isidore White, husband of the present appellant, were directed to show cause why the receivership should not be made permanent. The matter was continued from time to time until September 24th, on which date there was a decree of insolvency and for injunction in the usual form. A few days later certain other individuals were made parties as holders of what the bill calls "certificates of indebtedness" but which the statute (P.L. 1913 p. 521; nowRev. Stat. 8:2-8) calls "certificates of interest." The body of the certificate, similar to that reproduced in Bliss v. LindenCemetery Assn., 83 N.J. Eq. 494, except one clause omitted, reads as follows:
"This is to certify that ____ is entitled to 1/2000 share of the Montefiore Cemetery Association, Incorporated, of Newark, N.J., transferable only on the books of the (said association) in person or by attorney on surrender of this certificate. This certificate is a lien on the land purchase fund of the (association), and the holder thereof is entitled to have paid over to him 1/2000 part of said fund: and he will be so entitled until the last burial plot in said cemetery is sold and its proceeds distributed according to law.
(Signature of officers.)" *Page 299 
The appellant, Rose White, wife of Isidore White, was neither an original nor an added party defendant, but claims to be the holder of forty-eight certificates of one two-thousandth each, dated April 17th, 1928. She claims to have been ignored in the whole proceeding, which, after the receiver was finally appointed, and permanent injunction ordered, took the course of a petition by him, November 17th, 1930, setting up, among other things, that the association owned a cemetery tract of about seven and one-half acres which had been somewhat improved for cemetery purposes, but only two interments had taken place, and these were of unknown paupers; that there were three mortgages, the first of which was under foreclosure by leave of the court; that some dispute existed as to the validity of mortgages and claimed open indebtedness; but that the receiver had a cash offer of $289,500 from the Roman Catholic diocese of Newark for the purchase of the whole tract, based on the availability of the land for cemetery purposes, which offer he prayed leave to accept and, for that purpose to repurchase a small portion of the original tract previously sold (with some other minor details including transfer of the two bodies to another cemetery), and to use the net proceeds to close out the affairs of the association. There was the usual order to show cause, returnable November 25th, 1930, followed on December 10th by the order for sale now under appeal, delivery of deeds thereunder, final report of the receiver, order to show cause, and order approving his account and discharging the receiver, June 2d 1931.
Up to this point the appellant, claiming as holder of "certificates of interest," had not intervened nor had she been made a party in any other way; and for eighteen months after the date of the order for sale, there was no change in the situation. But on the 9th of June, 1932, appellant presented a petition to the chancellor for extension of time to appeal from the order for sale of December 10th, 1930, based on the statute (P.L. 1914p. 133), and obtained an order permitting the filing of appeal papers not later than the following day. See Raiken v.Montefiore Cemetery Assn., 123 N.J. Eq. 168. That appeal, after the proceedings outlined in *Page 300 
the cited case, is now before us for decision, and the grounds urged for reversal of this order of sale are epitomized in the brief for appellant as follows:
I. Lack of power in the court to authorize the sale in question, or the disinterment of the two bodies (which, however, were actually removed and reburied in another Jewish cemetery) for the following reasons:
"A. Because cemetery lands are exempt from seizure or sale by virtue of any process issued out of any court in this state."
If by "process" is meant a writ of execution or similar writ, the answer is that the sale was not made by virtue of any process, but by a receiver authorized to make it by order of the court of chancery. And we are of opinion that as the power of that court to appoint the receiver and supervise his administration of the trust committed to him is settled (AtlasFence Co. v. West Ridgelawn Cemetery Co., 110 N.J. Eq. 580;120 N.J. Eq. 239, 615, 616) by the same token, where it appears that the cemetery project has never made an effective start; that there is no substantial outlook for the future, that mortgage foreclosures are in progress, and an opportunity appears of selling the unbroken tract, for cash, and for cemetery purposes, thereby securing funds to pay all indebtedness, and leave something over for the certificate holders, it is within the power, and is the duty, of the court of equity to authorize such sale. The thing to be preserved is the charitable trust, if that be practicable; and in this case it has been accomplished. The land remains a cemetery; and according to the testimony taken before Vice-Chancellor Buchanan in the proceeding leading to the former appeal, two hundred and fifty bodies had been buried therein after the receiver's deed, and prior to October 3d 1932.
"B. Because land dedicated to use as a cemetery and in which interments have been made is inalienable."
This proposition is rested upon section 11 of the Cemetery act of 1851 (Nix. Dig. 1868 (at p. 100); Revision of 1877 100
(at p. 102); now Rev. Stat. 8:2-21). But a glance at that statute shows at once that it is restricted to plots or lots transferred to individual holders, and after an interment *Page 301 
has been made therein. The present case relates to an unbroken tract of land owned by a cemetery corporation, no part of which tract, so far as appears, had been laid out into lots or plots, let alone transferred to any individual holders. Consequently, point B quoted above has no application.
"C. Because the court has no power to appoint a receiver to wind up the affairs of a cemetery association."
A sufficient answer to this point in the present case is that neither the appointment of the receiver nor the form of the order appointing him is under appeal. That appeal — taken on the very last day permissible under the then existing statute for an appeal from a final decree — is not from the order adjudicating insolvency, appointing a receiver, and enjoining the exercise of corporate franchises, which was made on September 30th, 1930, but from an order authorizing the sale in toto of a vacant tract owned by a cemetery corporation, and for cemetery purposes. However, on the merits of the matter it may as well be repeated that if, as we have definitely held, a receiver may be appointed to administer affairs of a cemetery corporation as a charitable trust (Atlas Fence Co. v. West Ridgelawn Cemetery, supra (atp. 594) by the same token, where it appears that the trust has broken down, and is insolvent in the sense indicated by our cases (e.g., Empire State Trust Co. v. Trustees of Wm. F. Fisher Co., 67 N.J. Eq. 602), the proper course is to close it out, and the disposition of any surplus of proceeds over liabilities and administration expenses will be a matter for further action by the court of chancery in accordance with law. Assuming for present purposes, but not deciding, that appellant has a legal and beneficial status to question the propriety of the order for sale, the grievances on which she relies are those mentioned above and disposed of adversely to her claims. The sufficiency of the price received (in cash) has not been questioned on this appeal; and if appellant establishes her beneficial interest as a certificate holder, she may be entitled to assert a claim to a proportionate share in the net proceeds of the sale after payment of liabilities and administration expenses, though we do not pass on that point. We think that the different religious cast of the cemetery *Page 302 
after the sale is immaterial. The charter of the cemetery is not before us, and the remarks of Vice-Chancellor Kays in AtlasFence Co. v. West Ridgelawn Cemetery, 120 N.J. Eq. 239 (at p.243), are applicable and apposite. As to the removal of the two bodies of paupers, which were the only bodies buried on the tract, if the decree were to be reversed on that account, the logical sequence would be to require the bodies to be again disinterred and reburied, though concededly they are now in a Jewish cemetery. A decent respect for the dead naturally forbids further disturbance. The propriety of the original removal is thus a moot question and not ground in itself for present interference with the decree.
No harmful error being shown, the decree under review will be affirmed, with costs. Such costs to include the expense to respondent of printing such portion of respondent's state of the case on motion to dismiss the present appeal, as should properly have been included in the state of the case on this appeal.
When the appeal determined in 123 N.J. Eq. 168 was before us, the order of December 10th, 1930, was incidentally described as a final decree. It was so treated by counsel, and was so held by the vice-chancellor in the course of the hearing before him as to the good faith of the appellant. In the present appeal we have reviewed and are deciding the propriety of the order on the merits, without reference to the question of its final or interlocutory character; but it should be noted that neither the present decision, nor that reported in 123 N.J. Eq. 168, is to be taken as a ruling by this court that the order in question was a final decree. It may well be argued that as an order made in the course of administering a receivership, it was merely interlocutory. However, we have deemed it unnecessary to determine the point, in view of our decision on the merits.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.
For reversal — None. *Page 303