This matter comes before me on the submission of bids for a sales contract relative to the West Ridgelawn Cemetery.
The bill in this case was filed March 26th, 1931, and a custodial receiver appointed on that day. On the return of the order to show cause his appointment was continued and he is still acting.
An examination of the files in this matter indicates that the West Ridgelawn Cemetery Association had conducted its business in such manner that the property was permitted to deteriorate and become in a deplorable condition for many years prior to the appointment of the receiver. This condition has continued since the receiver took charge. I have inspected the cemetery and find that its condition has continued to become worse. This is due to a great extent to the continual litigation relative to this cemetery. Since the matter has been before me (which is June, 1935), hardly a month has passed in which some interested party has not appeared before me. The obligations of the cemetery had to be met from time to time and the court costs and expenses paid. The cemetery has now reached the stage at which some definite plan of operation must be adopted and the receivership terminated in order that the trust may be preserved and the graves properly cared for. *Page 240 
With this in mind I directed the receiver to notice all the parties in interest, lot owners, certificate holders, creditors and the attorney-general, to appear before me on April 26th, 1937. On that date there appeared before me the receiver and his counsel; Mr. William A. Sumner, representing the Passaic National Bank and Trust Company, trustee for the certificate holders; Mr. Adam Frank, who was president of the West Ridgelawn Cemetery Association; Mr. Abraham M. Herman, a lot owner, counsel for Mr. Frank and counsel for the Cemetery Association; Mr. Ernest Kurzrock, a lot owner; Mr. Harry Lane, representing the mortgagee of the cemetery land; Mr. Edward Feld, representing the holder of a receiver's certificate, and several other parties in interest. With the approval of all the parties appearing the receiver was instructed to advertise for offers or for a plan to raise funds which would enable him to carry out the trust reposed in him and report to the court on October 11th, 1937. On that date most of the persons above mentioned were present or represented by solicitors. At that time the Crest Haven Cemetery Association, Inc., presented a bid wherein it offered to act as the exclusive agency for the selling of all the unsold property and lands of the West Ridgelawn Cemetery. The offer, if accepted, would obligate the Crest Haven Cemetery Association to sell all the said lands within a period of seven years and guarantee the receiver the sum of $85,000 with interest, as the sales price. In addition the said Association would obligate itself to spend $25,000 for improvements and embellishments of the cemetery and agree to erect a chapel thereon for the users of the cemetery. The offer also provided for the establishment of a perpetual maintenance fund for the cemetery in an amount of at least six cents per square foot for all the lands to be sold. This perpetual maintenance fund when all the land is sold will amount to over $150,000. The offer also provides that the said Association will pay taxes required to be paid which may be assessed against the land.
After the above proposal was submitted to the court, I held the matter open for almost a year until October 29th, 1938. *Page 241 
During that time I conferred with Mr. Herman, a lot owner, the solicitor of Mr. Frank and the solicitor for the Cemetery Association; with Mr. Kurzrock, a lot owner; with Mr. Harry Lane, representing the mortgagee; with Mr. William A. Sumner, representing the trustee; with the receiver and his solicitors, Mr. Fast and Mr. Merritt Lane, and with a number of other parties interested in the matter. The purpose of these conferences was to obtain, if possible, a better offer or some plan of reorganization. No other plan or offer was presented during that period. The lot owners and other parties interested were not able or, if able, were not willing to advance funds for the purpose of caring for the premises and paying the creditors and costs of receivership. The receiver has no funds with which to satisfy the claims and to care for the graves and premises. The receiver is not in a position to sell the lots and plots in the cemetery because of the lack of funds with which to prepare, develop, drain, grade and maintain the premises nor has he funds whereby he can maintain a sales force or sales agency.
My knowledge of the facts in the case leads me to the conclusion that if the premises are to be maintained for the purposes for which they have been dedicated and the charitable trust continued, funds must be obtained from some source to meet the obligations and to improve and maintain the premises. People will not purchase lots for burial purposes unless they are assured that a perpetual maintenance fund is set up for future care of their plots. An examination of the entire record in this case clearly demonstrates that little effort on the part of those interested has been made to aid the receiver and the court in the development or sale of plots. The city of Clifton, in which the lands are situate, has threatened to sell the property or at least part thereof for unpaid taxes. The city also claims that it has a charge against the cemetery for dues for burial fees. These charges at present cannot be met by the receiver.
I have, therefore, concluded after carefully considering the offer of the Crest Haven Cemetery Association, Inc., that the same should be accepted. Under its proposal the cemetery *Page 242 
will be properly and suitably developed for burial purposes. This same company now holds an agreement to purchase from the receiver about fourteen acres of the original cemetery which is reported in the case of Atlas Fence Co. v. West Ridgelawn Cemetery,120 N.J. Eq. 239; affirmed (Court of Errors and Appeals),120 N.J. Eq. 615 and 120 N.J. Eq. 616. The company has more than carried out the provisions of its contract with the result that the fourteen-acre tract is being well maintained and developed. The present offer presents a plan for the development of that portion of the premises lying west of the Dwas Line Road which is in accordance with the franchise. Part of this tract is wooded and wholly undeveloped and has been in this condition since its purchase thirty years ago. I see no objection to the sale of this undeveloped portion by the receiver for non-sectarian burial purposes as the offer contemplates. If the offer is accepted and the terms fulfilled the receivership proceedings can be terminated. This is the first and only offer presented which will lead to such termination. Some of the parties in interest objected to the acceptance of the offer on the ground that the funds which will come to the hands of the receiver are inadequate. It seems to me under the circumstances that the funds are sufficient for the reasons above stated. A final disposition of this matter should be made in order that the trust and the cemetery may be preserved. The funds available thereunder will be sufficient for the operation and continuance of the cemetery in perpetuity and will satisfy all claims. The purpose of the receivership will thereby be accomplished and the necessity for its continuance removed. A board of trustees can then be elected by the lot owners and the trusts continued by such trustees and their successors.
It is claimed that this court has no power to approve the acceptance of the offer. The trust originally created in this case has broken down and there is no doubt of the insolvency of the corporation. Mr. Justice Parker, speaking for the court of errors and appeals in the case of Raiken v. MontefioreCemetery Association, 124 N.J. Eq. 297, said:
"* * * on the merits of the matter it may as well be repeated that if, as we have definitely held, a receiver may *Page 243 
be appointed to administer affairs of a cemetery corporation as a charitable trust * * * by the same token, where it appears that the trust has broken down, and is insolvent in the sense indicated by our cases * * *, the proper course is to close it out, and the disposition of any surplus of proceeds over liabilities and administration expenses will be a matter for further action by the court of chancery in accordance with law."
This court's only alternative, it seems to me, would be to exercise the power outlined in the above mentioned case and close out the matter. Inasmuch as such a power exists in the court to close out the matter certainly the court may direct the continuance of the trust if the legitimate claims against it are satisfied. The trust should not fail if by a fair and equitable plan it can be continued and its perpetual care and maintenance assured. The present offer admits of such a plan and I will, therefore, advise an order directing the receiver to accept the same.