THE EWING CEMETERY ASSOCIATION, INC., PETITIONER-DEFENDANT, v. THE TOWNSHIP OF EWING, RESPONDENT-PROSECUTOR.

Submitted January 21, 1941—Decided June 17, 1941.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *George H. Bohlinger, Jr.,* and *Hervey C. Scudder.*

For the defendant, *William N. Cooper* and *Frank H. Lawton.*

The opinion of the court was delivered by

DONGES, J. This writ of *certiorari* brings up for review a judgment of the State Board of Tax Appeals cancelling an assessment for taxes placed upon a building owned by the defendant, The Ewing Cemetery Association, Inc., by the prosecutor, Township of Ewing.

The defendant is a rural cemetery, incorporated and operating under *R. S.* 8:1-1, *et seq.,* having its cemetery in Ewing Township, Mercer County. There is erected upon the cemetery lands a building which, prior to the year 1933, was the home of the superintendent. In that year this building was enlarged and altered to consist of the cemetery offices, a chapel for burial services, and, in the basement, a crematory retort for the cremation of bodies. There is also located in the building a columbarium where urns or boxes containing cremated remains may repose. In accordance with the statute, a license to operate the crematory was issued by the Department of Health of the state.

Taxes were assessed for the years 1935, 1936, 1937, 1938 and 1939, but were not paid until May 1st, 1939, when payment of all due up to that date was made "under protest" and an appeal was taken to the County Board of Taxation seeking to have the 1939 assessment canceled. That board affirmed the assessment, whereupon appeal was taken to the State Board of Tax Appeals.

The State Board declined to determine whether or not the operation of a crematory was a cemetery function so as to make the building one exclusively devoted to cemetery uses, but canceled the assessment upon the theory that "a building

already devoted to undeniable cemetery uses was not rendered any the less a cemetery building by the use of its basement for non-profit cremation purposes. It is significant that the exemption statute, here in question, as distinguished from other exemption legislation, does not require that the buildings shall be *exclusively* devoted to cemetery uses." It construed the statute as granting exemption to buildings substantially devoted to cemetery uses.

We do not adopt this construction of the absence from the statute of a requirement that the building be exclusively used for cemetery purposes. Mr. Justice Parker, speaking for this court in *Washington Camp, &c.,* v. *Board of Equalization, &c.,* 87 *N. J. L.* 53, in dealing with another but similar exemption statute, said: "We do not overlook the fact that the amendment of 1913, *inter alia,* changes the clause 'actually and exclusively used' in the act of 1903 to read 'actually used.' As we view the matter the legislature by this elimination of the word 'exclusively' did not mean to extend the exemption to cases of permanent partial occupancy of buildings for business or other non-charitable purposes, but to avoid claims that such exemption would be forfeited notwithstanding the actual *bona fide* use of the entire building for benevolent purposes, if occasional use were made of it for other purposes, as the loaning of the lodge room to other organizations temporarily deprived of their quarters, and so on." It would appear, therefore, that where a property that would otherwise be exempt from taxation is so altered as to devote a part of the property permanently to a use which, if extended throughout the property, would render it ineligible for exemption, then the right to exemption is lost.

We are of the opinion, however, that the operation of a crematory is not such a non-cemetery function as to deprive the defendant of the exemption granted by the statute. The purpose of granting the exemption from taxation to cemeteries was, no doubt, to facilitate the proper operation of cemeteries because the proper disposition of human remains is a matter charged with the public welfare and public health. Cremation is one method or one step in a method of properly disposing of remains. It was testified that some of the bodies

which have been cremated at the building in question have thereafter been buried in lots in the cemetery, some have been placed in urns in the columbarium, and some (in fact, the greater number) have been disposed of in accordance with the wishes of relatives by sending them elsewhere. After cremation, the ashes are frequently stored temporarily in the columbarium awaiting final instructions from the families. We conclude, therefore, that in view of modern practices in this regard, the operation of a crematory in this building cannot be said to be so disconnected from the functions of a cemetery as to be a non-cemetery use.

Prosecutor also argues that the operation of the crematory is not on a non-profit basis. But we think this is not so. A charge of $40 is made for the use of the crematory. Out of this sum the expenses of operation are deducted and any balance is placed with the general funds of the cemetery which are used for the upkeep and perpetual care of the cemetery. This is not operation for profit.

Comment is made upon the fact that the license to operate the crematory is issued in the name of Arthur S. Hough individually and not the cemetery association. We are not concerned with that here. The question is the use to which the property is put. Mr. Hough applied for a license in the name of the cemetery, executing the application as an officer, and it is testified that the operation is by the cemetery and not by him individually.

The writ is dismissed, without costs.