133 N.J. Super. 92 (1975)
335 A.2d 571
LOCUSTWOOD CEMETERY ASSOCIATION, PETITIONER-APPELLANT,
v.
TOWNSHIP OF CHERRY HILL, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1975.
Decided March 6, 1975.
*94 Before Judges HALPERN, CRAHAY and ACKERMAN.
Mr. David L. Horuvitz argued the cause for appellant (Messrs. Horuvitz & Perlow, attorneys; Mr. Theodore Henry Ritter, on the brief).
Mr. M. Donald Forman argued the cause for respondent.
PER CURIAM.
Locustwood Cemetery Association (Locustwood) appeals from a final judgment of the State Division of Tax Appeals which essentially denied to Locustwood a real property tax exemption from an assessment of $283,200 for the year 1972 under N.J.S.A. 8A:5-10, which provides in pertinent part that
Cemetery companies shall be exempt from the payment of any real estate taxes on land dedicated for cemetery purposes * * *.
The record before us is brief, consisting of a factual stipulation between the parties and the testimony of the chairman of the board of trustees of Locustwood. It reflects that Locustwood's original certificate of incorporation was filed in the year 1907 under the name of Fernwood Cemetery Association. *95 The name was changed to Locustwood Cemetery Association in 1923. Until 1972 Locustwood's lands were never taxed and they had since 1907 been used exclusively in the interment of dead bodies. Over the many years interments had been conducted regularly and uninterruptedly, and as of 1972 approximately 10,000 bodies had been received. The land area comprised approximately 67 acres.
It was further agreed that Locustwood had conformed with the mandatory provisions of the New Jersey Cemetery Acts, both past and present. R.S. 8:2-1 et seq. and N.J.S.A. 8A:1-1 et seq. The specific conformances by Locustwood with statutory requirements set out in the stipulation need not be recited, our attention not being invited to any violations.
Without specificity the stipulation observed that "In one or more years there has been an excess of receipts over disbursements" and then posed this "Query For Determination" (we view the "Query" as essentially a forecast of the sole issue addressed to us):
Where, in the light of the foregoing stipulations, in one or more years there has been an excess of receipts over disbursements, whether this fact takes away the cemetery exemption as provided in N.J.S.A. 8A:5-10?
The Division of Tax Appeals felt that it did. On this record we are satisfied that it did not and reverse.
The Division judge held that "in all respects the taxpayer [Locustwood] qualified [for the exemption] with the exception of profit," noting that there were "substantial profits to the Association in the years 1967, 1968 and 1969." Received into evidence was a statement of receipts and disbursements from operations by Locustwood covering the years 1963 through 1972. It reflected that in some of those years there were losses and that in others receipts were greater than expenditures. By computation, the average of receipts in excess of disbursements in the stated years was $919.
*96 While the record is not clear, it appeared that in the years 1967, 1968 and 1969 Locustwood enjoyed certain capital gains which were attributed by its chairman as having been generated by the sale of some cemetery property to an adjacent hospital. It was stated, without documentation but also without refutation, to have been an installment sale with payouts of $39,000 in 1967, $53,000 in 1968 and $37,000 in 1969.
It was also developed, again without precision, that there was income from Locustwood's perpetual care fund, the corpus of which approximated $150,000. The record is silent as to what the income was in any given year from that fund. However the testimony, not rebutted, was emphatic that none of the income was ever distributed but rather was used for cemetery operations.
At the outset, it is settled that tax exemptions are not favored and that the burden of proving tax exempt status is upon the claimant since all property in the State is required to bear its equal share of the public taxation burden. Bloomfield v. Academy of Med. of N.J., 47 N.J. 358 (1966); In re Kuebler, 106 N.J. Super. 13 (App. Div. 1969); West Ridgelawn Cemetery v. State Bd. of Tax Appeals, 124 N.J.L. 284 (Sup. Ct. 1940), aff'd 125 N.J.L. 274 (E. & A. 1940). Cemeteries, however, since they facilitate the proper and necessary disposition of human remains  a subject matter charged with public welfare and health  are accorded tax exemptions, Ewing Cemetery Ass'n, Inc. v. Ewing Tp., 126 N.J.L. 610 (Sup. Ct. 1941), having been classified as quasi-public services or charitable institutions. Terwilliger v. Graceland Memorial Park Ass'n, 35 N.J. 259 (1961). On the other hand, where there has been a showing of private profit, tax exemptions have been held forfeited. West Ridgelawn Cemetery v. State Bd. of Tax Appeals, supra.
Here it appears that the Division judge resolved the issue of exemption against Locustwood since there was evidence of (1) "substantial income" from a perpetual care fund, (2) an undisclosed "profit" from the sale of property, *97 and (3) an annual average excess of receipts over disbursements. The cited reasons, singly or in concert, in our view do not rebut the taxpayer's claim for its long standing exemption.
First, we are satisfied that the Division erred in treating as "profit" the translation by Locustwood of its real property  clearly a capital asset  into dollars by the sale of it to an adjacent hospital. It does not appear that any of these funds are distributed to anyone and certainly not for profit.
Next, the mere fact that there may be income in so-called "perpetual care funds" (N.J.S.A. 8A:4-2, "Maintenance and Preservation Fund"), does not cause a forfeiture of the exemption. Income in such funds is legislatively contemplated and specifically exempted. See N.J.S.A. 8A:5-11.
Finally, we hold  as appellant contends  that the mere excess of receipts over disbursements in certain years of operation by a nonprofit cemetery corporation where there has been no distribution of the excess whatever, or where the monies have been held by the corporation to be expended as needed for cemetery purposes, does not remove the lands of the nonprofit cemetery corporation dedicated for cemetery purposes from the real property exemption conferred by the New Jersey Cemetery Act, N.J.S.A. 8A:5-10. In San Gabriel Cemetery Ass'n v. Los Angeles County, 49 Cal. App.2d 624, 122 P.2d 330 (D. Ct. App. 1942), a taxing authority took a position generally as that addressed to us by respondent municipality. The court there rejected the argument holding that
The word "profit" does not mean financial benefit that accrues to the association through the sale of burial space at a price in excess of its cost where such gain is used for the upkeep of the cemetery property. The word "profit" * * * means net earnings the benefits of which accrue directly or indirectly to the stockholders or members of the association. [49 Cal. App.2d at 126; 122 P.2d at 332]
The record here does not reflect that any of the excess of receipts over disbursements, whatever their source, were *98 utilized as improper distributions to any member of Locustwood, e.g., that cemetery assets were expended and disguised in the form of salaries or other emoluments to employees, association officers or directors not reasonably commensurate with their duties. Albeit in a different statutory and factual setting, we find Judge Kilkenny's observations in Trenton v. N.J. Div. of Tax Appeals, 65 N.J. Super. 1 (App. Div. 1960) instructive:
If the college [Rider College] does show operational surpluses for some years, the crucial inquiry is, "Who gets the money?" If we can trace it into someone's personal pocket, as the raison d'etre of the school, then, even though the form of operation is that of a so-called "non-profit" organization, the college is not entitled to tax exemption, despite its educational function. Town of Montclair v. State Board, etc., 86 N.J.L. 497 (Sup. Ct. 1914), affirmed 88 N.J.L. 374 (E. & A. 1915). Such an enterprise is commercial. But when we find, as here, that the surpluses, if any, go back only into the maintenance, expansion, and development of the school and its facilities, and that no individual can obtain anything more than just compensation for services, either presently or in the future, and that the funds of the institution cannot possibly be diverted to non-institutional uses, there cannot be said to be a profit-motive in the operation of the school. In granting tax exemption to the "colleges * * * not conducted for profit," the State does not demand that no "profit" shall be made in any year, but rather that the real purpose of the school's existence shall not be the making of money. [at 12]
In support of his holding the Division Judge relied on Terwilliger v. Graceland Memorial Park Ass'n, 35 N.J. 259 (1961); Frank v. Cloverleaf Park Cem. Ass'n, 29 N.J. 193 (1959); Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244 (App. Div. 1957), and Clifton v. State Bd. of Tax Appeals, 133 N.J.L. 379 (E. & A. 1945). Those authorities do not govern this record. Terwilliger, Frank and Di Cristofaro were not tax cases and essentially involved actions wherein the sale of memorial markers and plaques was deemed to be ultra vires cemetery associations' corporate powers and enjoinable.
Clifton was a tax exemption case with a tortured history and (not noted below) was terminated by Clifton v. State *99 Bd. of Tax Appeals, 136 N.J.L. 213 (E. & A. 1947). Clifton finally disallowed a tax exemption noting that
The burden of proving facts which would entitle the claimant to exemption has not been met. Rather, the corporate setups, the interlocking management and directorates, coupled with the inadequate books of account and a total absence of testimony as to the disposition of profits of the various corporations, point toward a studied effort to operate `the cemetery for profit under the guise of the non-profit association contemplated by the Rural Cemetery Act.' [136 N.J.L. at 216]
We perceive no Clifton taint in this matter. Nothing fairly suggests a "studied effort" to operate Locustwood for profit under the guise of a nonprofit association.
Accordingly, we conclude that the taxpayer had sustained its petition for a tax exemption for the year 1972.
Reversed.