THE GREENWOOD CEMETERY ASSOCIATION OF MILLVILLE, INC., PLAINTIFF, v. CITY OF MILLVILLE, DEFENDANT.

Tax Court of New Jersey

July 30, 1980.

*Shapiro, Eisenstat, Capizola, O'Neill & Gabage* for plaintiff (*Charles W. Gabage*, appearing).

*William L. Forester* for defendant, City of Millville.

*John J. Degnan*, Attorney General, for The New Jersey Cemetery Board, intervenor (*Mark S. Rattner*, Deputy Attorney General, appearing).

RIMM, J. T. C.

The Greenwood Cemetery Association of Millville, Inc. (hereafter "Association"), is a corporation organized under the

New Jersey Cemetery Act, *N.J.S.A.* 8A:1–1 *et seq.*, effective December 1, 1971, and its predecessor statutory provisions, the Rural Cemetery Act, *N.J.S.A.* 8:1–1 *et seq.* It is the owner of Lot 3, in Block 226A, a tract of just under 25 acres, at 10th and Broad Streets in the City of Millville, Cumberland County, where it operates and maintains a cemetery. The property of the Association was assessed for the year 1973 at $10,000 for improvements, namely, the residence of the Association's president. The other property of the Association was exempt. The Association appealed the assessment on improvements to the Cumberland County Board of Taxation, which sustained the assessment. There followed the present appeal by the filing of a Petition with the Division of Tax Appeals. The Association seeks a determination that the improvements are exempt from local property taxes under *N.J.S.A.* 8A:5–10.

Two hearings were held in this matter. The first hearing was in the Division of Tax Appeals. After that hearing the New Jersey Cemetery Board sought and obtained leave to intervene pursuant to *N.J.S.A.* 8A:3–21. Following the creation of the Tax Court the matter was transferred from the Division to the court. *N.J.S.A.* 2A:3A–26. In the Tax Court, after a conference among counsel for plaintiff and the municipality and the court, the record made in the Division of Tax Appeals was supplemented by the recall of one witness. *R.* 1:12–3(a) and (c).

On the cemetery grounds is a two–story building. The first floor of the building contains the office and the maintenance and storage facilities of the Association. The second floor consists of a residence occupied by the president of the Association and his family. As a result of this dual use of the building, the assessor made an allocation between exempt and nonexempt property, exempting the first floor from local property taxes and assessing the second floor at $10,000.

The president was also a trustee of the Association and the superintendent and caretaker of the cemetery grounds. The taxpayer's position is that the caretaker's on-site residence is necessary for the operation and maintenance of the cemetery.

The president of the Association testified concerning his residence, his caretaker activities and the need for a caretaker on the premises at all times because of vandalism problems.  He also testified that there had been conducted, from the residence, a private, profit-making business in the form of a corporation of which his wife was a stockholder.  The corporation, Park Bronze, engaged in the business of selling bronze memorial plaques.  The profits from the operation of the business inured to the benefit of the president's wife as a stockholder of the corporation conducting the business, and not to the Association which had no interest in Park Bronze at all.  Park Bronze paid no rent to the Association.  The testimony further indicated that, on or about December 1, 1971, by reason of the adoption of the New Jersey Cemetery Act, the stock in Park Bronze was transferred to the Association president's brother, and thereafter no new business was done by Park Bronze from the residence on the cemetery grounds.  Old business was continued.  The president testified in detail as to the activities carried on in the residence.  He described the collection of bills, the completion of orders, the keeping of books of account, the keeping of a checkbook, the keeping of the order forms and the activities engaged in by his wife in winding down the old business of Park Bronze.  The activities continued in October, beyond the critical date of October 1 of the pretax year, into November and December 1972 and also 1973.  See *N.J.S.A.* 54:4–23 and *Shelton College v. Ringwood*, 48 *N.J.Super.* 10, 136 *A.2d* 660 (App.Div. 1957) which fix October 1 of the pre–tax year as the critical date for determining tax–exempt status.  The president's wife kept all the profits realized from the winding down of the corporation's business, although no explanation was given as to how this was accomplished from a bookkeeping point of view.

Except for the operation of Park Bronze, the residence of the president would be exempt from local property taxes.  Considering the exigencies of modern times, the maintenance of a caretaker's residence on cemetery grounds fits within the definition of the statutory provision exempting from real estate taxes land dedicated for cemetery purposes and also

. . . all land, structures, buildings, and equipment used for the operation and maintenance of said lands so dedicated. [*N.J.S.A.* 8A:5–10]

See *Ewing Cemetery Ass'n v. Ewing Tp.,* 126 *N.J.L.* 610, 20 *A.*2d 607 (Sup.Ct.1941); *Moore v. Fairview Mausoleum Co.,* 39 *N.J.Super.* 309, 120 *A.*2d 875 (App.Div.1956) and *Luttenberger v. Restland Memorial Park Ass'n,* 51 *N.J.Super.* 507, 144 *A.*2d 12 (App.Div.1958). The providing of an on–site residence for a cemetery superintendent to deter vandalism is as much a cemetery function as the interment of bodies. Modern cemetery practice requires not only proper burial, but the provision of a clean, safe and well–maintained cemetery.

However, by reason of the overall view I take of this case, a more detailed review of the facts and the law relating to the caretaker's residence is not necessary, because I find that a private, profit–making business was carried on by a third party in the residence, the assessed real estate. Profits from the operation of the business were for the personal benefit of the Association president's wife. The operation of the business continued throughout the year 1972, specifically, during October, November and December 1972, and continued for some indefinite period into the year 1973. I conclude from these findings of fact that the residence is not exempt from local property taxes and that it should be assessed for local property tax purposes. It is not the legislative purpose of the New Jersey Cemetery Act to exempt property used for private personal gain from local property taxes. The act specifically says that the exemption therein provided shall apply to "buildings . . . used for the operation and maintenance of" a cemetery's lands. The conduct of Park Bronze's business does not fit within the statute.

The public policy of the State of New Jersey is clearly set forth in the statute and in case law. In *Terwilliger v. Graceland Memorial Park Ass'n.,* 35 *N.J.* 259, 173 *A.*2d 33 (1961), defendant cemeteries were enjoined by the Chancery Division from selling bronze markers or memorials at their cemeteries for installation on the graves of persons buried there. The injunction was issued on the grounds that the activity was beyond the corporate

powers of the defendants and contrary to public policy. The Supreme Court certified the defendants' appeal from the restraint before argument in the Appellate Division and affirmed the judgment of the Chancery Division. The defendants in *Terwilliger* were incorporated under the General Corporation Act, *N.J.S.A.* 14:1–1 *et seq.*, and operated cemeteries under the Rural Cemetery Act, subject, as the court said, "to all of the public policy and trust implications inherent in the statute."

> The law has long been settled in our State that such a cemetery is a charitable trust and its operation for purposes of private profit is offensive to public policy. [Citation omitted] . . . In the present case, defendants are operating public cemeteries; they have received and are enjoying tax exemption for that reason. [Id. at 265, 266, 173 A.2d at 36–37]

In *Frank v. Clover Leaf Park Cem. Ass'n,* 29 *N.J.* 193, 148 *A.* 2d 488 (1959), the court dealt with an association formed under the Rural Cemetery Act which engaged in the sale of grave markers. The court concluded that the defendant's independent enterprise of sales of memorials was *ultra vires* as well as contrary to the public interest and must be discontinued. The court said:

> A corporation so organized and enjoying the special privileges and immunities granted by the Legislature is a charitable trust, and its managers are trustees in charge of the operation of a quasi–public institution. Proper administration of the trust is incompatible with the pursuit or the making of a profit. *Any scheme directed to that end is unlawful.* [at 201; emphasis supplied] [148 A.2d 492]

For purposes of considering tax exemption, the following statement in *Frank, supra,* is apposite:

> An acute awareness of the quasi–public nature of this charitable trust as well as of its tax exemption and other privileges and immunities is necessary to a solution of the problem. Manifestly, in entering the market for the sale of memorials to lot owners in competition with private enterprise, these factors give the Association a decided competitive advantage. And, as has been said, the advantage is enhanced psychologically through the close contact with the family of the deceased before, at the time of, and after the burial. These factors of preferred economic position and ease of access to prospective customers in promoting sales, in our judgment, make necessary a strict construction of the statute . . . . [Citations omitted]. The sale of markers is not necessary to the procuring, sale, holding and use of land exclusively as a burial ground. . . Accordingly, we conclude that defendant's independent enterprise of sales of memorials is . . . contrary to the public interest and must be discontinued. [at 202–203, 148 A.2d at 493]

These pronouncements are clear and broad enough to preclude tax exemption for plaintiff Association. The use of Park Bronze may realistically be regarded as a "scheme" to engage in a profit-making activity while claiming tax exemption. Clearly there was profit here:

The word 'profit' . . . means net earnings the benefits of which accrue directly or indirectly to the stockholders or members of the association. [*Locustwood Cem. Ass'n. v. Cherry Hill Tp.*, 133 *N.J.Super.* 92, 97, 335 *A.2d* 571, 573 (App.Div.1975); Citation omitted]

*See* also *DiCristofaro v. Laurel Grove Memorial Park*, 43 *N.J. Super.* 244, 256, 128 *A.2d* 281 (App.Div.1957).

While the profit–making activities of the Association and Park Bronze were not as extensive nor as convoluted as those of the defendant cemetery and its related corporations in *Clifton v. State Board of Tax Appeals*, 136 *N.J.L.* 213, 55 *A.2d* 58 (E. & A.1947), the pronouncement there applies here. The court said, quoting Justice Perskie from an earlier case related to the case there under consideration:

"Tax exemptions are not favored. Each claim for exemption must be critically examined. Unless the right is clearly established it should be and is denied." [at 216, 55 *A.2d* at 59]

■ Nor can the application of the *de minimis* rule help the taxpayer here. A narrow exception to the profit–making prohibition of *N.J.S.A.* 54:4–3.6, "Exemption of property of non–profit organizations," which it may be argued could apply here, is that an occasional or incidental nonexempt activity, or a regular nonexempt activity which is of an inconsequential or *de minimis* character will not preclude an organization from obtaining tax exemption for its otherwise tax–exempt property. *Boys Club of Clifton, Inc. v. Jefferson Tp.*, 72 *N.J.* 389, 400, 371 *A.2d* 22 (1977) and *Princeton Univ. Press v. Princeton*, 35 *N.J.* 209, 217, 172 *A.2d* 420 (1961). There can be no finding that the activity of Park Bronze was *de minimis.* In terms of the activity of that corporation in the residence, there was considerable business activity resulting in profit to a private individual.

If a tax–exempt cemetery association causes, suffers or permits its real estate to be used by a profit–making business, the real estate is not exempt from taxation. Otherwise, the profit–

making business is not bearing its fair share of the tax burden as required by our law.

> The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. . . . Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption. [*Princeton Univ. Press, supra* at 214, 172 A.2d at 422; Citations omitted]

The position taken by the Attorney General in his motion for leave to intervene was that the residence was exempt. Following a review of the testimony taken to supplement the record, the Attorney General urged that the exemption under *N.J.S.A.* 8A:5–10 should not apply to the extent that there were business activities on the premises unrelated to the operation and "management" of the cemetery land, but that there should be an allocation by the assessor between the exempt activities of the cemetery in providing a caretaker's residence and the nonexempt activities of the corporation, Park Bronze. An allocation between exempt activities and nonexempt activities on the second floor is not proper. The allocation between the first floor and the second floor is not before the court, and the court expresses no opinion as to the propriety of such an allocation.

It is the judgment of this court that the residence is not exempt from local property taxes for the year 1973. The Clerk of the Tax Court will enter a Judgment that the assessment for the property for the year 1973 is as follows:

| Land | Exempt |
|------|--------|
| Improvements | $10,000.00 |
| Total | $10,000.00 |

One other matter requires the court's attention. An undated stipulation was entered into between the parties, apparently in the year 1976, by which it was agreed that the decision for the year 1973 shall be binding on the parties for all years thereafter until the appeal is determined, without the need for the taxpayer to file county or state appeals for those years. At the time of the hearing to supplement the record, counsel for the taxpayer and the municipality seemed to indicate that the stipulation did

not mean what it said; rather, the court was to make a finding for each year. For instance, counsel for the taxpayer advised the court that if it was found that an exemption would be proper for 1973 but for the activities of Park Bronze, it would be agreed that an exemption is proper beginning at whatever time the court determined that Park Bronze had ceased operations. The court refers to the stipulation, but no determination as to its validity or effect is necessary for a determination of the appeal for the tax year 1973, the only matter before the court. Any such determination shall abide a motion, by either party, on due notice to the other.