HOPKINS, J.T.C.
These are consolidated appeals from local property tax assessments for the years 1982, 1983 and 1984 applicable to Block 391, Lots 15, 15A and 16 in the taxing district of East Orange (City). Plaintiff (County) contends that the property is exempt from such tax pursuant to N.J.S.A. 54:4-3.3.
The initial Tax Court appeal for 1982 resulted in an order dismissing the complaint since County had not paid the taxes due and owing in accordance with N.J.S.A. 54:2-39. Rather than appeal that dismissal, County immediately commenced an action in lieu of prerogative writs in the Superior Court, Law Division. While the in lieu of prerogative writs matter was pending, Powder Mill I Assoc. v. Hamilton Tp., 190 N.J.Super. 63, 461 A.2d 1199 (App.Div.1983) was decided and it held that in direct appeals, failure to pay taxes was not jurisdictional and the appropriate statute should be construed to warrant dismissal only if taxes remained unpaid after a motion to dismiss on that ground was made by a taxing district.
The trial judge in the in lieu of prerogative writs proceeding held that he did not have jurisdiction to review the Tax Court dismissal since the New Jersey court rules provided that such review was in the Appellate Division. R. 2:2-3. However, in *348 view of the intervening Appellate Division opinion in Powder Mill I, supra, and since the disputed taxes had been paid, the in lieu of prerogative writs matter was treated as a motion for reconsideration of the Tax Court judgment of dismissal and transferred to the Tax Court pursuant to R. 1:13-4. There the Tax Court judgment dismissing the appeal for 1982 was set aside in accordance with Powder Mill I principles. Further, the 1983 year was held to have been at issue in the Superior Court matter since the Superior Court complaint was filed within the statutory appeal period for Tax Court review and, accordingly, was also held to have been transferred to the Tax Court. The 1984 year is the subject of a separate Tax Court complaint.
The subject property is improved with a four-story and basement office building together with a parking area. There is a total rentable area of 39,313 square feet.
As early as December 30, 1980, there was a proposal by the county administrator recommending that County acquire the subject property for use by county organizations, including the county superintendent of schools, county police, division of correctional services and division of data processing. That proposal included retaining both the Fidelity Union Bancorporation and the Turrell Fund as tenants under existing leases and using the rental income to help amortize the bonds to be issued to obtain funds to satisfy the purchase price.
A contract to purchase the property was approved by the county freeholders on June 24, 1981 by a resolution which cited the “pressing need for additional office space to house County personnel and activities.”
County acquired the property from Fidelity Union Bank, as distinguished from Fidelity Union Bancorporation, the tenant, by a deed dated July 6, 1981. That acquisition was subject to two leases. The lease to Fidelity Union Bancorporation covered 7,400 square feet of the first floor and basement, in addition to common areas, and included exclusive use of 14 parking spaces. That lease, dated April 30, 1981, was for ten years with options to renew for three additional five-year terms. The second lease *349 to the Turrell Fund covered 1,645 square feet on the second floor, together with six parking spaces. That lease expired on April 30, 1982, or approximately ten months after County took title to the property. Prior to the sale the area, other than that subject to the two leases, was utilized by the owner.
Under date of August 19, 1981, approximately six weeks after acquiring ownership, County prepared a proposal for the design of a new computer room to be located in the subject building. In September 1981, County retained a computer engineering firm to plan the relocation of its data processing services to the property. The proposal showed the tentative moving date to be December 31, 1981.
County began moving its personnel into the building in January 1982 when the division of correctional services moved into that part of the first floor which was not leased to Fidelity Union Bancorporation. That division later moved to the third floor in September 1983. When asbestos removal operations began on the third floor in November 1983, it was temporarily relocated elsewhere.
In October 1982, the county division of community action moved to the third floor and occupied approximately one-third of the floor space. It later moved to the second floor and recently, after additional renovations, moved back to the third floor.
The offices of the county superintendent of schools and an office of the New Jersey Department of Education moved into the building shortly after the move by the division of community action in October, 1982. Offices of the county division of welfare relocated to the building in the fall of 1984. The basement is presently being renovated for use by the county police.
N.J.S.A. 54:4-3.3 provides, in part, as follows: “[T]he property of the respective counties ... used for public purposes ... shall be exempt from taxation.” In Bergen Cty. v. Paramus Boro., 79 N.J. 302, 399 A.2d 616 (1979), the word “used” in the above statute was construed as follows:
*350 To interpret the word “use” to mean only actual use would be unrealistic, for a period of time will undoubtedly run between acquisition and placing the property in use. Some lead time will be involved due to readying the land and constructing whatever type of structures may be needed. Between these extremes is what we conceive to be the legislative intent—namely, a present intent to devote the property to a public use within a reasonable length of time, [at 308, 399 A.2d 616]
Applying N.J.S.A. 54:4-3.3, as interpreted by Bergen Cty., results in a finding that County intended, as of the October 1, 1981 assessment date, to fully devote the property to a public use within a reasonable length of time except as to those areas occupied by the two tenants whose leases were in effect. The Turrell Fund lease expired prior to the October 1, 1982 assessing date and so, for the tax years 1983 and 1984, only the space leased to Fidelity Union Bancorporation was not reasonably intended for public use.
On the 1982 assessment date approximately 23% of the building area did not meet the statutory “use” test and 19% of the building area did not so qualify for 1983 and 1984. The precise issue is whether 100% of the property must meet the “use” test in order for it to be exempt pursuant to N.J.S.A. 54:4-3.3.
In support of its position that private use of any portion of the building precludes exemption under N.J.S.A. 54:4-3.3, City relies upon Morris Cty. Park Comm’n. v. Chester Tp., 2 N.J.Tax 426 (Tax Ct.1981) and Ocean Cty. v. Dover Tp., 3 N.J.Tax 434 (Tax Ct.1981). The Morris Cty. Park Comm’n. case, supra, involved land in which the county owned a Vio undivided interest in common with private parties. The court there held that full public ownership was necessary in order to permit exemption under N.J.S.A. 54:4-3.3. Jamouneau v. Tax Appeals Div., 2 N.J. 325, 66 A.2d 534 (1949). Since County is the undisputed owner of the subject property, the principles expressed in the Morris Cty. Park Comm’n. case are not applicable.
The conclusion reached in Ocean Cty., does support City’s position. In that case, Ocean County, with the consent of the taxing district, brought an action pursuant to N.J.S.A. 54:2-41, *351 in an effort to correct a claimed erroneous overassessment. The taxing district’s assessor stipulated that the assessment was made at a time when he did not know that the owner, Ocean County, had only leased one-third of the building to a private party. The stipulation would have resulted in an apportioned assessment. The Tax Court judge held that the assessment could not be apportioned between that which was used for public purposes and that which was leased to a private party. In so holding, he relied upon Greenwood Cemetery v. Millville, 1 N.J.Tax 408 (Tax Ct.1980) and Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976). Further, the case of Cairola-Barber Post No. 2342 v. Fort Lee, 2 N.J.Tax 262 (Tax Ct.1981), which permitted an apportioned exemption, was distinguished and limited to its facts. In reviewing N.J.S.A. 54:4-3.3 and the cases cited in Ocean Cty., supra, I must respectfully disagree with the conclusion reached in that case.
It is noted that Greenwood Cemetery, supra, relied upon in Ocean Cty., involved the appeal of a partial assessment of a two-story building located on cemetery grounds. Greenwood Cemetery alleged that the total building was exempt pursuant to N.J.S.A. 8A:5-10, which exempts “all land, structures, buildings, and equipment used for the operation and maintenance of said lands so dedicated.” The structure had been apportioned for assessment purposes. The first floor was considered to be exempt since it was used as an office for the cemetery. However, the second floor was assessed at $10,000 since it was used both as the residence for the caretaker as well as to operate a private profit-making business. The caretaker’s wife, in corporate form, was engaged in the business of selling memorial plaques. Greenwood Cemetery had no interest in the corporation. The court held that the operation of the business on the second floor of the structure precluded the second floor from being exempt, even though without the business operation, it would have been exempt as the residence of the caretaker. It concluded that there were no grounds for allocating the joint use of the second floor between private use and cemetery use. *352 Since the only issue before the court was the exemption of the second floor, the court specifically did not pass on the validity of the assessor’s allocated exemption of the first floor of the building.
Long Branch, supra, was concerned with the exemption of a nonprofit hospital building pursuant to N.J.S.A. 54:4-3.6. The pertinent part of that statute then read as follows:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for ... hospital purposes.
The building was partially rented to a retail pharmacy. The Appellate Division held that under such facts, the building was not “actually and exclusively used” for hospital purposes; accordingly, there was no statutory authority for an exemption.
The Cairola-Barber Post No. 2342 case, supra, which permitted apportionment, and which Ocean Cty., supra, confined to its facts, involved the application of N.J.S.A. 54:4-3.5 which reads as follows:
Real estate or personal property owned and used for military purposes by any organization under the jurisdiction of this State, shall be exempt from taxation under this chapter on condition that all income derived from the property above the expense of its maintenance and repair shall be used exclusively for such military purposes; and any building, real estate or personal property used by an organization composed entirely of veterans of any war of the United States shall be exempt from taxation under this chapter. [2 N.J.Tax at 269]
The veterans’ organization exemption encompasses buildings and real estate, a much broader category than the hospital exemption which applies only to “buildings actually and exclusively used ... for ... hospital purposes.”
We are here considering N.J.S.A. 54:4-3.3 which exempts “the property of the respective counties ... used for public purposes.” In order to determine whether a portion of the tax lots may qualify for exemption under the statute, it is necessary to first define the term, “property.”
Property has been defined as:
That which is peculiar or proper to any person; that which belongs exclusively to one. In the strict legal sense, an aggregate of rights which are guaranteed and protected by the government____ That dominion or indefinite right of *353 use or disposition which one may lawfully exercise over particular things or subjects.
Property embraces everything which is or may be the subject of ownership, whether a legal ownership, or whether beneficial, or a private ownership.... Term includes not only ownership and possession but also the right of use and enjoyment for lawful purposes. [Black’s Law Dictionary (5 ed. 1979) at 1095]
The above definition shows that the term “property” when used alone, without modification, is all-embracing. This conclusion was reflected in the case of Wells Fargo & Co. v. Mayor and Aldermen of Jersey City, 207 Fed. 871 (D.C.N.J.1913), aff’d 207 Fed. 699 (3 Cir.1915). In interpreting a New Jersey statute which provided, inter alia, that a municipality would be liable for property damage resulting from a riot, the court was called upon to construe the extent of the term “property.” In so doing, it stated as follows:
The word “property,” literally taken, is nomen generalissimum, but it is not always so used. As ordinarily used, it means the thing possessed, but it may include the right to use and enjoy it. The more comprehensive meaning is presumed to have been intended by the use of such a word in a constitution, as, being the organic instrument, it is presumed to have been couched in broader phrases than is the case in a statute, which usually concerns itself with more precise matters. In statutes the broader or restricted meaning will be given according to the legislative purpose. A consideration of the old law, the mischief to be remedied, and the character of the remedy (Lord Coke’s rule) will also be helpful in determining whether words are to receive a literal, liberal, or restricted construction, [at 876]
The above fully supports the proposition that “property,” as used in N.J.S.A. 54:4-3.3, requires an extended general meaning. This conclusion is further supported by the principles that tax exemptions favoring governmental agencies are liberally construed and that such liberal construction should be sufficiently broad to encompass the legislative aim. Walter Reade, Inc. v. Dennis Tp., 36 N.J 435, 440, 177 A.2d 752 (1962); Newark v. Essex Cty. Bd. of Tax., 103 N.J.Super. 41, 53, 246 A.2d 509 (Law Div.1968). That principle was recognized in construing the “use” feature of the subject statute in Hanover Tp. v. Morristown, 4 N.J.Super. 22, 66 A.2d 187 (App.Div.1949), wherein the court stated:
*354 ... While an exemption from taxation granted to a private institution is strictly construed, the contrary is true of the exemption held by political bodies, since the latter are not taxed in a doubtful case. So the phrase “used for public purposes” should be liberally construed, [at 24, 66 A.2d 187]
Applying the above principles to the subject statute demonstrates that the legislative use of the term “property,” without any modifying language, means all county owned property, of whatever nature, which is used for public purposes. This requires a recognition that there may be situations, such as the instant one, when property, owned by a county but not wholly used for public purposes, should have its exemption apportioned to properly reflect the applicable county use. Such apportionment would implement the legislative intent to fully exempt county property used for public purposes and would be consistent with the principle that the subject exemption statute should be liberally construed to permit implementation of that intent. Further, apportioning the exemption coincides with the authority granted to counties to lease “any land or buildings or any part thereof not presently needed for public use.” N.J.S.A. 40A:12-24.
It should also be noted that an apportionment of the property between that which is exempt and non-exempt is not a novel concept. N.J.S.A. 54:4-3.6 restricts the land exemption to five acres which, in some instances, comprises only a portion of the tax lot. See Fairleigh Dickinson Univ. v. Florham Park, 5 N.J.Tax 343 (Tax Ct.1983). Further, that same statute was amended, effective June 27, 1983, to permit apportionment of a building between that used for exempt hospital purposes and that leased to a taxable profit-making organization. A. 1983, c. 224, § 1. That amendment revised the previous requirement that hospital use of a building had to be exclusive. Long Branch, supra.
Accordingly, the subject property is entitled to an apportioned exemption for each year to the extent it was not leased to private entities.
This conclusion disposes of County’s contention that since it owns the building, City is required to assess the tenants’ *355 leasehold interest pursuant to the Leasehold Taxing Act. L. 1949, c. 177, § 1; N.J.S.A. 54:4-2.3 et seq. That statute provides as follows:
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of. the lessee thereof, or his assignee, and assessed as real estate.
The above applies to property which is tax exempt by virtue of its ownership. As such, it would apply to federally owned property where there is no requirement of public use. Thiokol Chem. Corp. v. Morris Cty. Bd. of Tax., 41 N.J. 405, 197 A.2d 176 (1964).
County owned property, in order to be exempt, must also be used for public purposes. The leased portions of the subject property, not being used for public purposes, do not fall within the provisions of N.J.S.A. 54:4-3.3 and so are not exempt.
Parties shall submit a form of judgment, pursuant to R. 8:9-3.